REMINGTON ARMS, INC., Plaintiff, *v.* HARRIS BERGER, INC.,
Defendant.

Supreme Court, Special Term, Oneida County, August 17, 1955.

*Frank J. Warner, Jr.,* for plaintiff.

*Ferris, Hughes, Dorrance & Groben* for defendant.

PETERSON, J. Application is made herein on a show cause order for a preliminary injunction enjoining defendant, its agents, servants and employees from further advertising, offering for sale and/or selling plaintiff's products and commodities at prices less than that established in plaintiff's " Fair Trade Agreements " in the State of New York until a final determination of the issues herein.

The specific merchandise upon which this cause of action is based is shotgun shells, although the motion is inclusive of all merchandise manufactured by plaintiff and now sold or to be sold by defendant.

In the proof before the court it appears that defendant advertised for sale shotgun ammunition manufactured by plaintiff at a price of 25% off list price.

It appears from the affidavit of Mac Berger, president of the defendant corporation that the said ammunition was part of a stock of merchandise of Miller's Sport Shop of Catskill, New York, which defendant acquired on a closing out sale June 10, 1955, and Mr. Berger states that " the Remington ammunition and the single Remington shotgun acquired from Miller's Sport Shop were advertised for sale by Bergers at reduced prices for the purpose of closing out the small quantity thereof which Bergers acquired from Miller's Sport Shop and also for the purpose of discontinuing handling, selling and delivering such commodities," and that " prior to Berger's acquisition of this Remington ammunition and shotgun they had been held and offered for sale by Millers at reduced prices in the course of the closing out sale conducted by Millers, as previously indicated." Mr. Berger also states that " Bergers does not and for over 5 years has not regularly handled or engaged in retail sale of firearms or ammunition, and there is no present intention of going into the firearms or ammunition line of goods after this Miller stock is disposed of."

Plaintiff contends that there has been a violation by defendant of section 369-b of the General Business Law, which reads as follows: " Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

Defendant obviously was not a party to the contract between plaintiff and Miller's Sport Shop, but it is apparent from the section that it applies whether or not defendant was a party to such contract.

Defendant, by its answering affidavit, has admitted all the basic allegations contained in the verified complaint and motion papers, and defends upon the ground that its sale of plaintiff's merchandise below the so-called fair trade level is embraced by the exception contained in paragraph (a) of subdivision 2

of section 369-a of the General Business Law. The section reads as follows: " 2. Such provisions in any contract shall be deemed to contain or imply conditions that such commodity may be resold without reference to such agreement in the following cases: (a) In closing out the owner's stock for the purpose of discontinuing delivering any such commodity."

It thus appears, that this section allows a retailer to close out " the owner's stock where there is an intention to discontinue delivering such commodity."

While the Miller's Sport Shop obviously could close out the stock where it was the intention to discontinue delivering plaintiff's merchandise, the very language of the statute seemingly does not apply to defendant.

To gather the intention of the statute, as it applies to the instant case, it might be well to consider the specific language thereof, to wit " (a) In closing out the owner's stock for the purpose of discontinuing delivering any such commodity."

It appears that the important words in the above-quoted sentence are " owner's stock " and " for the purpose of discontinuing ". Apparent is the fact that the defendant bought the stock for the purpose of holding a sale at reduced prices, and that defendant did not acquire the stock in question " for the purpose of discontinuing " delivering this type of merchandise. Nor does it seem to the court that defendant was the " owner " of the stock within the meaning of the statute at the time it contemplated its sale of the merchandise.

In a California case, *Sterling Drug* v. *Benatar* (99 Cal. App. 2d 393, 398), the court said, in part, in referring to a provision similar to paragraph (a) of subdivision 2 of section 369-a of the New York statutes: " The provision referred to permits deviation from fair trade prices: ' (1) In closing out the owner's stock for the purpose of discontinuing delivering any such commodity.' It does not give a general exemption from fair trade prices for goods *bought* at a close out sale independent from the circumstance whether the reseller himself also intends to discontinue delivering any such commodity." (Italics supplied.)

The court further said (p. 398): " It seems very doubtful whether a merchant who, like appellant, bought large quantities of a war surplus commodity for the express purpose of selling them below fair trade price, can be said to be ' closing out the owner's stock,' even if he does not intend to further carry the same commodity."

It is, of course, the purpose of the Fair Trade Law to protect a producer from damage to his good will resulting from price cutting at the retail level. (*General Elec. Co.* v. *Macy & Co.,* 199 Misc. 87; *Bulova Watch Co.* v. *Klein on the Square,* 199 Misc. 818.) And the effect of defendant's sales of plaintiff's merchandise at a 25% reduction on the retail level would surely work irreparable injury to plaintiff in its relations with its dealers accompanied by the resultant cheapening of plaintiff's products in the minds of its ultimate consumers.

Under the undisputed facts appearing to this court, it appears that the granting of the motion for a preliminary injunction is essential to maintain the *status quo* of this case pending the trial of the action.

Order may be prepared accordingly, the plaintiff to provide an undertaking pursuant to section 893 of the Civil Practice Act, the undertaking to be in the sum of $500.