Isadore Bookstein, J.
This is an action for a permanent injunction to restrain defendant from violating the Fair Trade Law of this State, to wit, article XXIV-A of the General Business Law, and is brought pursuant to section 369-b thereof.
The following facts are not disputed:
Defendant is a noncontracting retailer. The licensee of its drug department has made sales of plaintiff’s products at prices below the minimum retail prices set by plaintiff, after notice of the existence of fair-trade contracts with other retailers. Defendant did not make such sales itself, but rather such sales were made by a separate corporate entity, which has a license for the drug department in defendant’s establishment. Defendant, however, concedes that, if plaintiff’s fair-trade agreement is valid and enforcible, it is applicable to it, where its licensee or tenant of the drug department in_its establishment violates the same. (Cf. Bulova Watch Co. v. Sattler’s Inc., 208 Misc. 257.)
On this basis, plaintiff has established its prima facie cause of action.
Defendant has asserted certain affirmative defenses, which it claims defeats plaintiff’s right to an injunction.
The first such defense is to the effect that the prices fixed by the contract have for a long period of time been generally disregarded and violated by a large number of persons and stores selling the products in defendant’s competitive area and are still doing so, and that plaintiff has failed, refused and neglected to demand that such stores maintain the prices set forth or, that plaintiff, with the exercise of reasonable diligence, should have known that such persons were making such sales.
The record is barren of any proof by defendant of actual knowledge on the part of plaintiff of violations by retailers, which it did not seek to halt promptly. The only proof on that subject is the discovery by plaintiff of occasional violations, and in each such instance it resorted to appropriate steps to obtain compliance, without resorting to legal action; and that, where such efforts were unsuccessful, it instituted legal action against the offenders and obtained injunctions either by consent or by default.
The next defense is that plaintiff has failed to enforce its fair-trade contract uniformly and thus has discriminated against some and in favor of others.
The evidence fails to sustain that defense.
*493 It is true that after this action was started, defendant had two shoppers make some purchases in some retail drugstores in the tri-city area, at prices below the mínimums fixed. Such sales were made without plaintiff’s knowledge. Promptly upon hearing thereof, plaintiff’s representative called upon the retailers involved, all but one of whom, who was not available, testified upon the trial.
In each of these cases, the articles in question were on the shelves of the store with the retail price marked on the containers either in crayon or on pasters affixed thereto. The prices thus appearing were the minimum fair-trade prices in existence at the time that the containers were marked and placed upon the shelves. Periodically, plaintiff issues supplemental price lists, showing changes in the minimum prices. In each of the instances referred to, there was a failure or omission to make a correction in the prices affixed to the containers of the product, in accordance with the supplemental price list.
Upon the error being called to the attention of the retailers, they acted promptly to correct the situation. It is clear that in not one of the instances referred to was there a willful and intentional violation by the retailer. There was simply human error, easily understandable when one considers the vast number of small packages on the shelves of a retail drugstore.
Interweaved with these defenses is the defense of abandonment of plaintiff’s rights by failure to have a proper enforcement program.
This defense, too, it without adequate proof to support it.
The evidence clearly shows frequent inspection by representatives of plaintiff of the stores of retailers to ascertain if its minimum prices are maintained; if a violation is found it is promptly reported to higher authority of plaintiff, which sends letters to the offenders, to cease and desist; if such letters do not produce compliance, the matter is referred to local counsel, who employ a private detective agency to shop the offending .retailer’s store, and if the violation is found to be continuing, actions for injunctions are promptly instituted.
The law is clear that, “ while the mere fact that there are other violators is not of itself a defense which will defeat an injunction against one violator, it is necessary that the producer make a sincere and diligent effort to prevent price-cutting, and where price-cutting is so general and long continued as to indicate that the producer has waived or abandoned his rights under the statute and the price fixing contracts, an injunction against one price cutter will be denied.” (General Elec. Co. v. S. Klein-on-the-Square, 121 N. Y. S. 2d 37, 54.)
*494 The fact that others violate the fair-trade contract is not, ipso facto, a defense to this action. (Eastman Kodak Co. v. Schwartz, 133 N. Y. S. 2d 908, 913; Calvert Distillers Corp. v. Nussbaum Liq. Store, 166 Misc. 342, 346; Mead Johnson & Co. v. Macy & Co., 28 Misc 2d 322.)
What is required of a manufacturer is that it make a sincere and diligent effort to prevent price-cutting.
The evidence in this case clearly shows such effort, constantly in vogue. (Cf. Revere Copper & Brass v. Economy Sales Co., 127 F. Supp. 739; Eastman Kodak Co. v. Home Utilities Co., 138 F. Supp. 670; Dart Drug Corp. v. Lilly & Co., 216 Md. 20; General Elec. Co. v. Macy & Co., 199 Misc. 87, 95.)
Defendant argues that plaintiff has shown no actual damage, i.e., any loss of business, by reason of price-cutting. This may very well be due to the effectiveness of its enforcement policy. In any event, the statute section 369-b expressly declares that the underselling is unfair competition and is actionable at the suit of any person damaged thereby.
Defendant argues that, since the suit must be by any person damaged thereby, actual damage is a prerequisite to plaintiff’s cause of action.
The statute is not subject to such a narrow interpretation. Indeed, in Old Dearborn Co. v. Seagram Corp. (299 U. S. 183, 195), the United States Supreme Court said: “It [the Fair Trade Act] proceeds upon the theory that the sale of identified goods at less than the price fixed by the owner of the mark or brand is an assault upon the good will, and constitutes what the statute denominates ‘ unfair competition ’ ”. (Emphasis supplied.)
The base of unfair competition is an assault upon good will. Such injury to good will, actual or threatened, may be enjoined, even though proof of specific money damage is not supplied. (Bristol-Myers Co. v. Picker, 302 N. Y. 61, 70.)
As I view the statute, the reference to the person damaged is a reference to the person who is the manufacturer, who is the victim of what the statute expressly states is ‘ ‘ unfair competition ” and for whose benefit, such “unfair competition” is made actionable, as the one damaged thereby.
There can be no doubt that the authorities in this State have uniformly, and quite logically, treated the manufacturer as the party “ damaged ” by “ unfair competition ”, without proof of any actual money damage.
Defendant raises another contention to the effect that the Fair Trade Law is not made applicable to Post Exchanges and. hence, should not be applicable to it.
*495 Post Exchanges are maintained by the military establishments of the United States. They are not engaged in the retail business generally or for profit. They sell only to members of the armed forces and their dependents. It is a means by which the military establishment gives some fringe benefits to members of the armed forces and their dependents. They are not, in a true sense, in competition with retailers whose customers are members of the general public. Defendant concedes that plaintiff could not obtain an injunction against a Post Exchange to restrain it from selling to eligible members of the armed forces its products, below the minimum fixed price fixed in its contracts. It is inconceivable that the Fair Trade Act of New York State could be made applicable to the Government of the United States or its military establishment. The sales by Post Exchanges afford no reason or excuse for defendant to fail to comply.
Defendant argues further that it is in a situation similar to Post Exchanges by reason of its method of operation. Its scheme is to invite all employees of government, Federal, State and local to become members at $2 per year, and such membership entitled the holders thereof to purchase from it at reduced prices. Such employees are a very large segment of the population. The scheme may be a very wise one from the standpoint of attracting retail trade in large volume. But it does not afford defendant protection from violating the minimum fixed prices on fair-traded items.
No merchandising plan of the retailer can justify the selling of plaintiff’s product at less than the fair-trade minimum price. (Cf. Bristol-Myers Co. v. Picker, 302 N. Y. 61, supra; General Elec. Co. v. Macy & Co., 199 Misc. 87, 89, supra.)
Defendant advances one further contention to the effect that the New York State Fair Trade Act is not applicable.
It appears that the licensee of defendant’s drug department is a New York State corporation whose name is “ P. D. Inc.”, which is a wholly owned subsidiary of ‘ Peoples Drug Stores, Incorporated ”, a Maryland corporation having its main office and place of business in Washington, D. 0. The latter corporation sells products, including those of plaintiff, at retail throughout the United States, basically through subsidiary outlets. It purchases plaintiff’s products in large quantities, without regard, at the time of purchase, as to which specific items will ultimately be sold from any particular retail outlet. As ‘ ‘ P. D. Inc. ’ ’ has need to restock plaintiff’s products, it requests delivery of the same from “ Peoples Drug Stores, Incorporated ” and the goods are shipped by it to “ P. D. Inc.” at defendant’s place of business in Albany County, New York, for sale therein at retail. *496 It is also asserted that there is no Fair Trade Law in the District of Columbia.
In these circumstances, defendant asserts that the New York State Fair Trade Law cannot be made applicable to plaintiff’s products thus acquired by “ P. D. Inc.”, defendant’s New York State corporate licensee.
Defendant argues that once “ Peoples Drug Stores, Incorporated” acquires plaintiff’s products in a non-fair-trade act area, it acquires full and complete ownership of the product, and is free to sell it at retail through a subsidiary corporation in a fair-trade area, free from the Fair Trade Law of such area.
In my judgment, such contention is untenable.
In the first place, “ Peoples Drug Stores, Incorporated ”, when it purchased plaintiff’s products, acquired title to the products, but not to the brand or trade-mark of plaintiff.
Thus, in Old Dearborn Co. v. Seagram Corp. (299 U. S. 183, 194,195), the United States Supreme Court said: “We are here dealing not with a commodity alone, but with a commodity plus the brand or trade-mark which it bears as evidence of its origin and of the quality of the commodity for which the brand or trademark stands. Appellants own the commodity; they do not own the mark or the good will that the mark symbolises. And good will is property in a very real sense, injury to which, like injury to any other species of property, is a proper subject for legislation. Good will is a valuable contributing aid to business — sometimes the most valuable contributing asset of the producer or distributor of commodities. And distinctive trade-marks, labels and brands, are legitimate aids to the creation or enlargement of such good will. It is well settled that the proprietor of the good will is entitled to protection as- against one who attempts to deprive him of the benefits resulting from the same, by using his labels and trade-mark without his consent and authority. ’ * * * £ Courts afford redress or relief upon the ground that a party has a valuable interest in the good-will of his trade or business, and in the trade-marks adopted to maintain and extend it.’ * * * The ownership of the good will, we repeat, remains unchanged, notwithstanding the commodity has been parted with.” (Emphasis supplied.) (See, also, Guerlain, Inc., v. Woolworth Co., 297 N. Y. 11.)
Secondly, “ Peoples Drug Stores, Incorporated ” is not being sued for its disposal to “ P. D. Inc.” of plaintiff’s products. The action is based on the sale at retail by “ P. D. Inc.” in New York State.
Thirdly, the transactions between “Peoples Drug Stores, Incorporated” and “P. D. Inc.”, regardless of their relation *497 ship, is nothing more or less than a sale to “ P. D. Inc.” of plaintiff’s products to it at wholesale, for resale by “ P. D. Inc. ”, of such products, at retail, in New York State. No matter what its source of supply is, when “ P. D. Inc. ’ ’ acquires the products of plaintiff for retail sale in New York State, the Pair Trade Law of New York State applies immediately to such retail sales.
Defendant has failed to sustain its affirmative defenses. Money damages have been waived by plaintiff, which has successfully established its cause of action.
Findings of fact and conclusions of law have been waived.
Plaintiff is entitled to the permanent injunction sought herein.