# HOUSE OF SEAGRAM, INC., Appellant
## v.
# ASSAM DRUG COMPANY et al., Respondents

(159 N.W.2d 210)

(File No. 10402.  Opinion filed May 24, 1968)
Rehearing denied July 10, 1968

**Willy, Pruitt & Matthews, Acie W. Matthews,** Sioux Falls, for plaintiff and appellant.

**Myrabo & Weisensee, Tony Weisensee, Lowell J. Noteboom,** Canton, for defendants and respondents.

RENTTO, Judge.

Plaintiff is the manufacturer and exclusive distributor to a wholesaler located in South Dakota of certain alcoholic beverages which bear its trademark, brand or name. Such wholesaler sells directly to the defendants and to other retailers in the state. Plaintiff entered into contractual arrangements with various South Dakota retailers as authorized under our Fair Trade Law, SDC Ch. 54.04, which agreements provided minimum retail resale prices below which retailers may not sell plaintiff's products.

Defendants were not parties to such contracts, but knew that plaintiff had entered into them with other retailers in the state and had been advised of the terms thereof and of the minimum fair trade bottle prices fixed by the plaintiff on its products. Nevertheless, defendants at various times offered for sale and sold such products at less than their minimum prices. In this litigation plaintiff seeks to enjoin defendants from continuing such sales. On plaintiff's motion for judgment on the pleadings, supplemented by a limited stipulation of facts, judgment was entered denying an injunction. From this judgment it appeals.

In its Conclusion of Law I, the court stated that the injunctive relief sought by the plaintiff should be denied for the following reasons: "(1) Plaintiff has failed to show damage requiring the equitable relief of injunction. (2) Plaintiff has a full, adequate and complete remedy provided in Section 54.0402 of the fair

trade act without resorting to injunctive relief. (3) Plaintiff, by knowingly permitting the flow of its liquor to defendant on the one hand while seeking injunctive relief against said defendant on the other, is coming into Court seeking equity with unclean hands."

■    Unfair competition is defined in SDC 54.0406 as follows: "Willfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this chapter, whether the person so advertising, offering for sale, or selling is or is not a party to such contract".

That section further provides that such competition is actionable at the suit of any person damaged thereby. Defendants seem to contend that under this provision plaintiff has no cause of action unless it has suffered financial loss. The authorities do not support this restricted view. Miles Laboratories v. Owl Drug Company, 67 S.D. 523, 295 N.W. 292, states that the manufacturer who has the right to fix the price and name the conditions under which its products will be sold "is entitled to injunctive relief in case of violation of such conditions." See also Kinsey Distilling Sales Co. v. Foremost Liquor Stores, 15 Ill.2d 182, 154 N.E.2d 290; 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 262(1); 52 Am.Jur., Trademarks, Tradenames, etc. § 187.

■ ■    The acts constituting unfair competition set out in SDC 54.0406 are considered an assault upon the good will of the manufacturer of the identified goods. The Fair Trade Law is designed to protect a producer from damage to his good will resulting from price cutting at the retail level. Remington Arms, Inc. v. Harris Berger, Inc., 208 Misc. 561, 144 N.Y.S.2d 751; Mead Johnson & Company v. Martin Wholesale Distributors, Inc., 408 Pa. 12, 182 A.2d 741. The proprietor of the good will is entitled to protection against one who attempts to deprive him of the benefits resulting from it.

■ ■    The courts give him relief because he "has a valuable interest in the good will of his trade or business, and in the

trademarks adopted to maintain and extend it." Old Dearborn Distributing Co. v. Seagram-Distillers Corporation, 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109. An injunction against injury to his good will, actual or threatened, does not require a showing of specific money damages to support it. Bristol-Myers Co. v. Picker, 302 N.Y. 61, 96 N.E.2d 177, 22 A.L.R.2d 1203; Mead Johnson & Company v. G-E-X Inc., of Albany, 37 Misc.2d 491, 235 N.Y.S.2d 951. Accordingly, it is our view that plaintiff is a person damaged by the unfair competitive practices· of the defendants.

The trial court took the position that "If Seagrams wishes to stop Assam from selling Seagrams at less than the minimum price, it need only direct the wholesaler supplying Seagrams products to Assam to stop further sales. If the wholesaler refuses, Seagram can stop its sales ·to the wholesaler." This ·is sometimes referred to as the remedy of self-help. This holding underlies the reasons for denying injunctive relief set out in (2) and (3) of Conclusion of Law I. Since they share a common basis we will treat them together.

This view is obviously based on the premise that plaintiff has a fair trade contract with its distributor in which the distributor agrees not to resell plaintiff's fair trade commodities to any retailer unless the retailer in turn agrees not to sell the same at not less than a stipulated price. Such agreements are permitted under SDC 54.0402(3), but the pleadings and the stipulation on which this matter was submitted make no mention of such contract. The only contracts referred to therein are the retail price maintenance agreements between the plaintiff and various South Dakota retailers.

■    The Supreme Court of Illinois in Kinsey Distilling Sales Co. v. Foremost Liquor Stores, supra, answering a similar contention, wrote the following:

"Defendants maintain, further, that plaintiff has an adequate remedy of self-help. The sole authority cited to sustain its contention is Calvert Distillers Co. v. Wish, D.C., 162 F.Supp. 364, which expressed the view that the simple expedient of refusing to sell fair-traded products

to retailers who refuse to enter into its fair trade agreement would afford an aggrieved party such as the present plaintiff an adequate remedy. Here, the plaintiff does not sell to retailers. The only practicable way, therefore, for plaintiff to stop the sale of its products to defendants would be a requirement that its distributors refuse to deal with them. But, as pointed out in General Electric Co. v. R. H. Macy & Co., 199 Misc. 87, 103 N.Y. S.2d 440, 449: 'Nor is there any requirement that General Electric change its system of merchandising through distributors. Similarly, there is no requirement that General Electric enter into agreements with distributors to cut off violators. Indeed, the latter course may involve General Electric in a violation of the Anti-Trust Laws. [Citations.] The policy of the Fair Trade Law allowing vertical price fixing runs directly counter to the policy of the anti-trust law and the common law. It represents a small area situate in otherwise prohibited territory. Provisions for enforcement are contained in the statute. To go beyond the limits of the statute for enforcement would be to tread on dangerous ground.' "

We share this view. See also Fashion Originators' Guild of America, Inc. v. Federal Trade Commission, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949. Obviously the remedy of self-help is not an adequate remedy nor does plaintiff's failure to utilize it justify denial of equitable relief on the ground that it comes into court with unclean hands.

As observed by this court in the Miles Laboratories case, the right to stabilize the price of a brand as authorized by the act applies only to commodities that are in free and open competition with commodities of the same general class produced or distributed by others. SDC 54.0402. It was there further held that the existence of this competitive situation is necessary to prevent an illegal monopoly under our law. In an article in 64 Yale Law Journal 967 at p. 972, the author referring to the requirement of free and open competition says: "From the consumer's point of view this is a crucial safeguard against exploita-

**326**

tion. So long as there is effective competition between manufacturers, the fact that each of them sees fit to fix minimum resale prices is of secondary importance." The purpose of so limiting the application of Fair Trade Laws is to prevent the evils of price fixing.

■ Acts such as ours, insofar as interstate commerce is concerned, are made possible by enabling federal legislation. Miller-Tydings Amendment of Sec. 1 of the Sherman Act, 15 U.S.C.A. § 1, and the McGuire Amendment of Sec. 5(a) of the Federal Trade Commission Act, 15 U.S.C.A. § 45(a). Each of these acts, in language similar to the language of our act, gives its blessing only to commodities that are in free and open competition. Since resale price maintenance is a privilege restrictive of a free economy it has been held that the limitations placed on such practice by Congress in these Federal Acts must be strictly construed. United States v. McKesson & Robbins, 351 U.S. 305, 76 S.Ct. 937, 100 L.Ed. 1209. We think the limitations in our state act must be similarily insisted upon.

■ In the Miles Laboratories case free and open competition was admitted by the pleadings and such admission was accepted as sufficient to establish the fact. Here too, free and open competition was admitted by the pleadings, but we feel that such admission should not be accepted as establishing its existence. This view trenches upon the rule that an admission in a pleading renders proof of the admitted fact unnecessary, Englund v. Berg, 69 S.D. 211, 8 N.W.2d 861, but we think the importance of this requirement of our law to the public warrants making the exception. To require the proof of such fact, we believe, will enhance the protection afforded the consumer from illegal price fixing in the guise of resale price maintenance arrangements. The burden of establishing this fact should be on the one seeking the benefits of the act. In this regard we depart from the rule in the Miles Laboratories case.

This view follows the position taken by the Supreme Court of Pennsylvania in a series of rather recent cases. Sinclair Refining Co. v. Schwartz, 398 Pa. 60, 157 A.2d 63; Gulf Oil Corporation v. Mays, 401 Pa. 413, 164 A.2d 656; Gillette Co. v.

Master, 408 Pa. 202, 182 A.2d 734; Mead Johnson & Co. v. Breggar, 410 Pa. 408, 189 A.2d 866. In the Gulf Oil Corporation case that court said:

"Even though the admission here is made in an adversary proceeding, still the state's interest in seeing that unlawful price fixing is not indulged in is of such importance that the mere admission by the adversary is not sufficient to provide the essential prerequisites necessary to invoke the statutory rights and exemptions provided by the act."

In commenting on this view the author of the note in 49 Cal.Law Rev., 540 observed: "Although the majority cited no authority for refusing to accept the defendant's admission, it seems clear that the court's action was correct. Since the antitrust laws are for the protection of the public, it is against the public interest to have a private litigant's admission be determinative of the fact of 'free and open competition.' "

In the Gillette Company case that same court, again referring to the free and open competition requirements, said this:

"Before a court can entertain an action for a preliminary injunction under section 2 of the Act of 1935, (73 P.S. § 8), it must be established that the plaintiff-producer's products are in fair and open competition within the state. Parties cannot by agreement eliminate this requirement and confer power upon the court to enter an injunction despite lack of compliance with the statutory provision. It is fundamental that parties to a divorce action cannot waive the requirement that the libellant prove the residence necessary to establish the court's jurisdiction; nor can they by stipulation agree that the residence necessary to establish jurisdiction is complied with. Indeed, it is never within the power of litigants to invest a court with any power not conferred upon it by law. * * * Here, as in the requirement of residence in divorce actions, because of the overriding public interest in price-fixing litigation, the courts

> will not enforce fair trade provisions against non-signators unless all the statutory requirements are satisfied. * * * This is true notwithstanding the willingness of the parties to waive strict compliance with the legislative mandate."

Since it was not established by proof that the commodities which plaintiff seeks to protect relate to products which are in open competition, the granting of injunctive relief would have been improper.

This litigation was presented to the trial court on admitted facts so the appeal presents only questions of law. In denying plaintiff's application for injunctive relief the trial court reached the right result. We will not overturn that action because its reasons for so doing were wrong. Northwestern National Bank of South Dakota v. Gillis, 82 S.D. 457, 148 N.W.2d 293.

As an additional reason for denying injunctive relief the trial court concluded that SDC 54.0406, applied in the manner proposed by plaintiff, would violate the Constitution of South Dakota, but did not specify which provision thereof would be offended. In view of the well established rule that courts will not pass on constitutional questions if the merits of the case may otherwise be decided, we do not regard the constitutional issue as being before us. Ehlers v. Jones, 81 S.D. 351, 135 N.W.2d 22.

Affirmed.

ROBERTS, BIEGELMEIER and HOMEYER, JJ., concur.

HANSON, P. J., dissents.

BIEGELMEIER, Judge (concurring).

Though the court in the Miles Laboratories case determined the Fair Trade Law constitutional, the briefs on this appeal include considerable argument as to that point. Respondent cites recent decisions indicating the weight of authority has now swung to those states holding the law unconstitutional (see e. g.

Bulova Watch Co. v. Zale Jewelry Co. of Cheyenne, 1962, Wyo., 371 P.2d 409) and urges reconsideration of that question as basis for affirmance.

The author of the article "South Dakota Fair Trade Law An Examination of the Non-Signer Provision" in 13 South Dakota Law Review 113, after citation of many opinions, advances the view Miles should be overruled. The court's opinion in affirming the trial court for the reason stated, does not require a decision of the constitutional question and with this mention of the arguments made, I concur in the opinion.

HANSON, Presiding Judge (dissenting).

I am unable to concur in the disposition of this case without a decision on the merits.

There are no controverted issues of fact presented as the case was submitted to the trial court on admitted and stipulated facts. In this respect the complaint alleges plaintiff "is the exclusive distributor to South Dakota wholesalers of certain alcoholic beverages, namely: Seagram's VO Canadian Whisky, Seagram's Seven Crown American Blended Whisky, Seagram's Extra Dry Gin, 100 Pipers Scotch Whisky by Seagram, and Seagram's Crown Royal Whisky" and that plaintiff's products "are in free and open competition with commodities of the same general class produced or distributed by others in the State of South Dakota." These allegations in the complaint, among others, are expressly admitted in defendant's answer. Proof of such facts appear of record in the form of affidavits with reference to a preliminary motion.

According to SD RCP 8(d) "Averments in a pleading to which a responsive pleading is required, * * * are admitted when not denied in the responsive pleading." There are no exceptions to admissions by implication except as to "the amount of damage". In the present action the allegations of the complaint were expressly admitted. This was considered sufficient in the prior related case of Miles Laboratories v. Owl Drug Co., 67 S.D. 523, 295 N.W. 292. This is in accord with the

elementary rule of long standing in this state that a party is not obligated to prove allegations of fact which have been admitted as true by his adversary. To hold otherwise, as this court said in Englund v. Berg, 69 S.D. 211, 8 N.W.2d 861, "would utterly destroy the efficacy of pleadings and burden litigants with the necessity of preparing for a trial at large".

It is a matter of such common and general knowledge this court could take judicial notice of the fact that Seagram's alcoholic products are in free and open competition with other similar products in South Dakota. This would obviate proof of that issue as proof of facts judicially noticed is unnecessary.

It is difficult for me to believe harmful public consequences could possibly result from allowing parties to stipulate or admit that a widely advertised and sold fair traded article was in "free and open" competition. The interest of the public in this action cannot fairly be equated with an action for divorce involving the marriage relationship and custody of minor children. By express statute no divorce in this state can be granted upon the default of the defendant, or upon uncorroborated statement, admission, or testimony of the parties or upon any finding of fact made by a referee, and the court must, in addition to any such statement, admission or testimony of the parties or finding of the referee, require proof of the facts alleged. SDC 1960 Supp. 14.0723. There is no similar governing statute involving the present cause of action and our general rules of practice should apply. Policy matters of this nature for the protection of the public should be left to the legislature.

Instead of accepting the admitted and stipulated facts as this court did in the Miles Laboratories case, a localized Pennsylvania rule of practice is being substituted and enforced. The cases are not cited or followed in any other jurisdiction. Furthermore, the current efficacy of this rule, even in Pennsylvania, may now be seriously questioned as the Pennsylvania Supreme Court in a later case held their Fair Trade Act to be unconstitutional. See Olin Mathieson Chemical Corp. v. White Cross Stores, 414 Pa. 95, 199 A.2d 266.

The procedural point upon which this case is being determined was not raised or suggested by either party. Plaintiff rightfully relied on the precedent of the Miles Laboratories case that proof of admitted facts was unnecessary. By affirmance an opportunity to prove those facts is foreclosed and decision on the merits denied.