Mead Johnson & Company, Appellant, *v.* Chester Discount Health and Vitamin Center.

Argued April 29, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Francis Hopkinson,* with him *Drinker, Biddle & Reath,* for appellant.

*Samuel M. Tollen,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, July 2, 1963:

The plaintiff, Mead Johnson & Company, sought in the Court of Common Pleas of Delaware County an injunction to prevent the defendant Chester Discount Health and Vitamin Center, Inc., from selling the plaintiff's products at prices less than those designated in a contract which the plaintiff had entered into with other dealers in Pennsylvania, thus invoking the machinery of the Pennsylvania Fair Trade Act (Act of June 5, 1935, P. L. 266, as amended, 73 P.S. §§7, 8).

The defendant filed preliminary objections averring that the plaintiff's fair trade contract does not meet the requirements of the applicable law. The court sustained the preliminary objections, allowing the plaintiff 20 days to file an amended complaint. When the plaintiff failed to do this, the court entered judgment in favor of the defendant. The plaintiff appealed.

The lower court, in its opinion, properly stated that the Fair Trade Act is in derogation of the common law and therefore must be strictly construed. There can be no doubt that fair trade acts are novel in the history of American law since they oppose the basic principle of the American economic system which envisages at all times fair and open competition with the utmost freedom in the fixing of prices. If all merchants are unhampered in price-fixing, with no one being restricted by the others, it is obvious that no one

can scale his prices high and expect to obtain the business which will go to those whose prices are low. It is only when certain business combines conspire to keep prices high that the public is deprived of the protection which it automatically obtains from open competition. The United States Government has been particularly concerned about the growth of monopolies which could dominate industrial and commercial establishments and thus be enabled to charge exorbitant prices. The Sherman Anti-Trust Act is an almost legendary St. George fighting the dragon of monopoly. Yet, the sanctioned [1] Fair Trade Acts must seem to mock all triumphs of the Sherman Anti-Trust St. George because they permit industrial and commercial establishments to set prices which will not only be upheld by the law but which will allow the establishments to enlist all the forces of the law to enforce their prices on persons and firms with whom they do not have contracts.

The Fair Trade Acts go even further. They not only deny dealers the right to sell goods at prices less than those designated by the manufacturer or wholesaler, thus protecting the manufacturer all the way through, but they offer no curb on retailers selling goods at prices higher than those designated by the manufacturer. Thus the public is victimized in that it may not obtain an article at a price less than the one specified by the manufacturer but it may be charged *more* than the minimum price. The net result is that the manufacturer is given armor plate protection in his minimum price ukase, but the public may be gouged to the extent the traffic will bear.

It was the contemplation of this posture of affairs which induced the lower court to refuse the prayed-for injunction, on the basis that before the

---

[1] See *Burche v. General Elec. Co.*, 382 Pa. 370.

plaintiff may enlist the support of the court it must promise to require the retail dealer to sell at an expressed stipulated price, neither below nor above it. The "Fair Trade" contract which the plaintiff sought to enforce reads (Paragraph 1) as follows: "(1) 'Retailer' will not (except as specifically permitted by said Fair Trade Act) directly or indirectly advertise, offer for sale, or sell any of such 'Commodities' in said state at less than the minimum retail prices stipulated therefor by 'Manufacturer.' "

The court pointed out the difference between the language in the contract and the language in section 1 of the Act which states that a fair trade contract shall not be regarded as violating any Pennsylvania Law because it contains provisions of the following character: "(a) That the buyer will not resell such commodity, except at the price stipulated by the vendor. (b) That the buyer of such commodity require upon his resale of such commodity that the purchaser from him agree that such purchaser will not in turn resell except at the price stipulated by the vendor of the buyer."

The court said that "our Legislature did not legalize contracts which provide that the retailer would not sell 'at a price less than the minimum retail price or resale price,' but on the contrary it legalized only contracts which provided that the buyer will not resell the commodity 'except at the price stipulated by the vendor.' "

This reasoning might be controlling if section 1 stood alone, but the Court overlooked other sections which are as much integral parts of the legislation as section 1. Section 2 specifies that a contract will not be deemed in violation of Pennsylvania law if it provides: "Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant

to the provisions of section one of this act, whether the person so advertising, offering for sale or selling is, or is not, a party to such contract, is unfair competition and is actionable at the suit of such vendor, buyer or purchaser of such commodity . . ."

The entire Act is obviously aimed at preventing the sale of commodities at prices *less* than the stipulated prices, not, as the lower court states, at prices *different* from the stipulated price. The case of *Pepsodent Co. v. Krauss Co.*, 200 La. 959, 9 So. 2d 303, dealt with the Louisiana Fair Trade Act, which has the same wording as the Pennsylvania Fair Trade Act. The Court there said: "A careful reading of the Act shows that its aim or purpose is to be effectuated or carried out by preventing price cutting. A reading of section 1 of the Statute, without taking into consideration its other provisions, might lead to the conclusion that the Statute permits only contracts which provide for sales and resales at a fixed or exact price. However, *when section 1 is considered with the other sections of the Statute, especially section 2, in the light of its purpose or aim, the conclusion is inescapable that a minimum price is contemplated.* If it were otherwise, some restriction would have been placed on sales at prices in excess of those stipulated in the contract . . . Since the statute precludes sales at prices less than those stipulated in the contract and places no restriction on sales at prices in excess of those stipulated, the statute is in effect establishing a minimum price." (Emphasis supplied).

In the case at bar the court below considered section 1 as if it were separable from the rest of the Act. But section 1 is not merely the capstone of a pyramid, removable at will, it is so much an unremovable part of the pyramid that its forcible truncation would make the whole pyramid unrecognizable for what it purports to be.

Judge FREEDMAN of the United States District Court for the Eastern District of Pennsylvania, disposed of a contention similar to the one advanced by the appellee here, in the following language: "Nor do I think the variance in the language of the Pennsylvania statute from that of some other states which limit the stipulated price to a minimum price is any indication of a legislative purpose to require that in all fair trade cases in Pennsylvania the manufacturer or producer must, to obtain the benefits of the Act, fix a maximum as well as a minimum price. This is demonstrated by the absence of any proscription in the Pennsylvania Act against a sale above the stipulated price, although a sale *below* the stipulated price is declared unlawful §2, 73 P.S. §8) . . . The Miller-Tydings amendment excepted from the Sherman Act fair trade contracts 'prescribing *minimum* prices.' If 'a price stipulated' in a fair trade contract, under Pennsylvania's Fair Trade Act adopted in 1935, is something different from or less than 'minimum prices', then the Pennsylvania statute was never made effective by the Federal authorization. One must recoil from such a conclusion, so at war with the unbroken line of Pennsylvania authority." (Emphasis in original decision)[2].

The decree of the court below is reversed, with a procedendo.

Mr. Chief Justice BELL, Mr. Justice COHEN and Mr. Justice ROBERTS dissent.

---

[2] *Mead Johnson & Company v. West Chester Discount Health & Vitamin Center, Inc.*, 212 F. Supp. 310 (U.S. D.C., E.D. Pa. 1962).