**274**

REVLON, INC.
v.
CHESTER DISCOUNT HEALTH AND
VITAMIN CENTER, INC.,
and
West Chester Discount Health and
Vitamin Center, Inc.,
and
Martin Weiner
and
Samuel Tollen.
Civ. A. No. 34294.

United States District Court
E. D. Pennsylvania.
Nov. 27, 1963.

Richard J. Gordon, Philadelphia, Pa., for plaintiff.

Samuel Tollen, Chester, Pa., for defendants.

VAN DUSEN, District Judge.

The hearing on the Motion (filed October 9, 1963) for a Preliminary Injunction was initially scheduled for October 15, 1963, but was continued at the request of both counsel (see D–6) due to the unavailability of witnesses. The hearing was held on November 14 and 15, 1963, and counsel were granted leave to supplement the record by a stipulation, which was filed with the trial judge on November 21, 1963 (Document 6).

Counsel for plaintiff conceded that the individual defendants were not properly brought before the court as defendants at the above hearing and, hence, that any preliminary injunction could not apply to them as defendants.

The District Sales Manager of plaintiff (Mr. Adler) established the requisite jurisdictional amount by testimony concerning expenditures for advertising of the registered trademark "Revlon" (see P–1, P–9 and P–10) and concerning the volume of sales in his District, which covers that part of Pennsylvania east of Altoona. He testified that plaintiff was a Delaware corporation and the pleadings (pars. 2–3) established that defendants are Pennsylvania corporations.

This witness established that plaintiff's fair-traded products, as shown on price lists marked P–18A and P–19A, are sold in Pennsylvania in fair and open competition with products of the same general class (cosmetic and beauty products) produced or manufactured by Max Factor, Helena Rubinstein, Dorothy Gray, and others (see pp. 4–5, 11–12, 14 and 22 of P–2, and P–3—P–5). He also testified that plaintiff had a continuous program of policing Fair Trade contracts and prices in Pennsylvania.

The record clearly establishes sales by the defendant corporations in the fall of 1962 below the established Fair Trade prices of plaintiff. See, for example, paragraph 12 of Answer and paragraph 13 of Complaint, which is admitted in the Answer, as well as the testimony of Miss Rafaj.[1]

From November 1961 to August 1962, form letters were mailed by plaintiff to the corporate defendants enclosing Fair Trade price lists and stating that "agreements with dealers in our products located in your state pursuant to the Fair Trade Act" had been entered into, which agreements provided "that our products shall not be sold at less than the established minimum retail Fair Trade prices shown on the enclosed list."[2] See P–15, P–1, P–18 and P–19A. Identical letters were sent by registered mail to corporate defendants, but they were returned marked "Refused." See P–14, P–16, P–17 and P–19.

Since October 1962, there has been another store in Chester within a block of defendants' Chester store which sells plaintiff's products at less than the minimum Fair Trade prices on the above-described price lists, but notice of these violations at this store was not given to plaintiff by defendants prior to institution of this suit (see D–6, P–21 and P–22).

■ Since the record does not show that the prices of the following items, sold at special sales at prices less than the prices specified in the Fair Trade price lists (P–18A and P–19A), were included in such Fair Trade price lists,[3] plaintiff is not entitled to a preliminary injunction as to these items:[4]

1. There were also several sales below such prices at the Chester store in 1961 and early 1962. See P–7 and P–11—P–13.

2. These letters also stated:
   "As you no doubt know, the sale of any of these products by any person at less than the stipulated price is prohibited under the Fair Trade Act of your state.
   "We should like to have an immediate explanation from you as to the violation of our Fair Trade contract, and we request that you immediately stop selling our products below the established minimum retail Fair Trade price."

3. The top of page 8 of P–18A shows that the special sale of Satin Set Hair Spray was included on the Fair Trade price list, P–19A. At page 12 of P–18A, under code numbers 0382 and 0673, "Silicare" is listed under a special Fair Trade price.

4. The Fair Trade contracts (P–9 and P–10) provide that the retailer shall not "advertise, offer for sale or sell any of our Products at less than our established minimum resale prices." This court has held that sales by a person such as plaintiff at prices less than the minimum resale prices cause the plaintiff to lose the protection of the Fair Trade Act. See page 4 of Opinion of Hon. Joseph S. Lord, 3d. dated 6/26/63 in Eli Lilly & Co. v. Warner Stores & Chester Discount Health & Vitamin Center, Inc., Civil Actions Nos. 33053 & 33054. See, also, Mead Johnson & Co. v. Chester Disc. H. & V. Cen., 411 Pa. 377, at page 381, 192 A.2d 364, at page 366 (1963), where the court said:
   "The entire Act is obviously aimed at preventing the sale of commodities at prices *less* than the stipulated prices, not, as the lower Court states, at prices *different* from the stipulated price."
   In Gillette Co. v. Two Guys From Harrison, Inc., 36 N.J. 342, 177 A.2d 555 (1962), which was cited with approval on another point by the Supreme Court of Pennsylvania in Gillette Company v. Master, 408 Pa. 202, 213, 182 A.2d 734

| Code # | Page of P–18A & P–19A | Product Name |
|---|---|---|
| 0742, 0750 | 8 | Hi and Dri Roll-On Deodorant with Neomycin [5] |
| 0658 | 11 | Top Brass Medicated Hair Dressing |
| 0668, 0744 | 11 | Top Brass Roll-On Deodorant with Neomycin |
| 0342 | 7 | Living Curl Hair Spray [6] |
| 0197 | 3 | Eterna Cream |

———◆———

In view of the analysis and authorities contained in plaintiff's brief (Document 8), it is only necessary to comment on these points raised by defendants: [7]

■ A. The delay between October 1962 (time of plaintiff's making last purchase) and October 1963 in instituting this action does not indicate an absence of irreparable harm to plaintiff in view of the pendency in Delaware County of the case of Mead Johnson & Company v. Chester Discount Health & Vitamin Center (C.P.Del., March Term 1962, No. 1993), in which case the Delaware County Court ruled on January 4, 1963, that plaintiff's Fair Trade contracts did not comply with the Pennsylvania Fair Trade Law (73 P.S. § 7 ff.), since they did not specify a stipulated resale price but permitted retailers to sell at any price above a set minimum resale price. The Supreme Court of Pennsylvania did not decide that case, rejecting the above position of the lower court, until July 1963. See 411 Pa. 377, 192 A.2d 364. Under these circumstances, it was not unreasonable for plaintiff to delay until October before instituting this suit against these defendants.[8]

(1962), it was held that the fair-traded price of the individual products "was abandoned" when they were sold in combination with other items as part of a special sale (see p. 559 of 177 A.2d). In view of these authorities, plaintiff is not entitled to a preliminary injunction to enforce the resale prices of these five products, particularly where the terms and circumstances of the special sales are not clearly set forth in the record.

5. Exhibit D–3A shows plaintiff was itself selling this product at a price which was less per ounce than the Fair Trade price, as shown at page 8 of the price list (P–18A).

6. Exhibit D–10A shows plaintiff was itself selling this product at a price which was less per ounce than the Fair Trade price, as shown at page 8 of the price list (P–18A).

7. The trial judge specifically denies making the statement apparently attributed to him in the second sentence under 6 on page 9 of defendants' brief (Document 7). The trial judge did suggest to the parties that they try to adjust their differences, which is his practice in such cases. The motion for a preliminary injunction was dismissed in part at the end of plaintiff's case and the relief requested by plaintiff has been further limited in Conclusion of Law #4. The plaintiff has sustained its burden of proof on the factual issues necessary to entitle it to the relief provided for in Conclusion of Law #4. See Mead Johnson & Co. v. Martin Whole. Dist., Inc., 408 Pa. 12, 182 A.2d 741 (1962).

8. Counsel for defendants did not challenge the assertion of counsel for plaintiff that he had over 15 such suits to file as soon as the above July 1963 decision of the Supreme Court of Pennsylvania became final. Under Rules 69 and 73 of the Supreme Court of Pennsylvania, counsel have at least ten days within which to request review or reargument.

■■ B. There is no merit in defendants' contention (page 6 ff. of Document 7) that plaintiff's contract (as exemplified by Exhibit P–9) does not comply with Pennsylvania law. The argument is that the language used in the Act does not authorize Fair Trade contracts between manufacturers and retailers. Even if the attenuated reading of the Act advanced by defendants is correct, the question is moot because it is perfectly clear that manufacturers can enforce Fair Trade prices against retailers apart from privity of contract, see 73 P.S. § 8; there is no invalidity for lack of consideration as defendants contend.[9] Furthermore, in the case of Lentheric, Inc. v. F. W. Woolw'th Co., 338 Pa. 523, 13 A.2d 12 (1940), the conclusion is implicit that the Act does admit of Fair Trade contracts between manufacturers and retailers. See, also, General Electric Company v. Hess Brothers, Inc., 155 F.Supp. 57 (E.D.Pa.1957).

■ C. Since the cases and the record indicate that defendants have been consistently selling fair-traded items below the minimum resale prices, their contention that plaintiff is precluded from relief in this proceeding on the doctrine of "unclean hands" is rejected.

The findings of fact requested by plaintiff (Document 4) are affirmed insofar as they are not inconsistent with the foregoing.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the subject matter and of the corporate defendants. See Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79 (3rd Cir. 1958).

2. Paragraphs 1–3 of plaintiff's requests for Conclusions of Law (Document 5) are adopted as Conclusions of Law of the court.

3. Plaintiff is suffering immediate and irreparable injury from the damage to its tradename by the corporate defendants in selling its many, properly fair-traded products in the discount houses operated by such defendants. Plaintiff has no adequate remedy at law.

4. Upon entry of a bond in the amount of $5,000., in accordance with F.R.Civ.P. 65(c), plaintiff will be entitled to a preliminary injunction, enjoining the corporate defendants, their agents and employees, and all persons acting under their authority and control, from wilfully and knowingly advertising, offering for sale, or selling at retail in the Commonwealth of Pennsylvania east of Altoona, any Revlon commodities, other than the following, at prices which are less than the minimum retail prices now or hereafter established therefor by plaintiff pursuant to its Fair Trade agreements:

Hi and Dri Roll-On Deodorant with Neomycin

Top Brass Medicated Hair Dressing

Top Brass Roll-On Deodorant with Neomycin

Living Curl Hair Spray

Eterna Cream

Plaintiff may submit a decree providing for a preliminary injunction in accordance with the foregoing.

9. The authorization by plaintiff to retailers to sell its trademarked products is sufficient consideration for agreements undertaken by retailers in documents such as P–9 and P–10. The decisions of the Pennsylvania appellate courts do not support defendants' contention that the decision of September 11, 1963, in Eli Lilly and Company v. West Chester Discount Health and Vitamin Center, Inc. (C. P. Chester, No. 1618 of 1963 in Equity) is applicable to this record. See Mead Johnson & Co. v. Martin Whole. Dist., Inc., supra; Gever v. American Stores Co., 387 Pa. 206, 127 A.2d 694 (1956); Burche Co. v. General Elec. Co., 382 Pa. 370, 115 A.2d 361 (1955). Also, it is noted that an appeal is now pending before the Supreme Court of Pennsylvania from the above-mentioned September 11, 1963, decision.