474 A.2d 266

**YOUNG J. LEE, INC., t/a Hites Friendly Drug Store, Appellee,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF REVENUE, BUREAU OF STATE LOTTERIES, Appellant.**

Supreme Court of Pennsylvania.

Argued May 26, 1983.

Decided Dec. 23, 1983.

368

Nancy A. Patterson, Robert L. Liken, W. Michael Trant, Philadelphia, for appellant.

Samuel P. Kamin, Pittsburgh, for appellee.

Before ROBERTS, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

The Department of Revenue (hereinafter "Department") has appealed from an order of the Commonwealth

Court staying its revocation of appellee's lottery license. The Department of Revenue revoked appellee, Young J. Lee, Inc.'s, lottery license without a post-termination hearing. Because appellee raises a substantial constitutional question on the merits and there is no adequate remedy at law, Commonwealth Court, not the Board of Claims, had jurisdiction of appellee's case. However, since appellee failed to establish irreparable harm, which is required to obtain a stay, *Pennsylvania Public Utility Commission v. Process Gas*, 502 Pa. 805, 467 A.2d 805 (1983), we reverse Commonwealth Court and dissolve the stay.

On August 8, 1978, the Department gave appellee a license to sell lottery tickets. The Department granted the license under a contract in which appellee agreed to comply with all the terms of the State Lottery Law, 72 P.S. § 3761–1 *et seq.*[1]

On December 7, 1981, Young Lee, appellee's president, pleaded guilty to ten counts of theft by deception in violation of § 3922 of the Crimes Code, 18 Pa.C.S.A. § 3922. According to the charges, on numerous separate occasions appellee had substituted generic drugs for those carrying brand names. The Department regarded appellee's guilty plea as conclusively establishing violation of the State Lottery Law and, on a breach of contract claim, exercised its discretion to revoke appellee's lottery license by letter dated June 24, 1982, effective July 6, 1982, without a hearing. The Department relied on § 3761–7(b)(3) of the State Lottery Law which provides as follows:

> The secretary may refuse to issue a license pursuant to this section, or may suspend or revoke a license so issued if it [sic] shall find that the applicant or licensee: ... (3) Has been found guilty of any fraud or misrepresentation in any connection.

72 P.S. § 3761–7(b)(3).

Appellee filed a petition for review and a motion to stay the Department's revocation in Commonwealth Court.

1. Act of August 26, 1971, P.L. 351, No. 91, § 1 *et seq.*

Claiming that the revocation of its license was violative of due process because it occurred without a hearing, appellee sought injunctive relief. The Department filed a motion to quash, which was denied. The Department then filed a petition for reconsideration which was also denied. On December 3, 1982, Commonwealth Court ordered the Department to reinstate appellee's lottery license. The Department now appeals that decision.

■■■■ Initially we note that appellee correctly asked the Commonwealth Court, under its exclusive appellate jurisdiction over final orders of government agencies, 42 Pa.C.S. § 763(a), to review the Department's revocation of its license as well as the Department's refusal to provide a hearing on the matter. However, Commonwealth Court incorrectly determined that appellee's application for a stay pending its review is within Commonwealth Court's original jurisdiction. 42 Pa.C.S. § 761. A stay, like a supersedeas, is an auxiliary process designed to supersede or hold in abeyance the enforcement of the judgment of an inferior tribunal. *See Conston v. New Amsterdam Casualty Co.,* 366 Pa. 219, 77 A.2d 603 (1951). Thus, such applications for relief will not generally be entertained until after a notice of appeal or petition for review has been filed. Pa.R.A.P. 1702(a). In any case, any order granting a stay or supersedeas prior to an appeal will be vacated if no timely appeal or petition for review is filed. Pa.R.A.P. 1702(b). Moreover, an application for a stay pending action on a petition for review initially "shall ordinarily be made to the government unit." Pa.R.A.P. 1781. Thus, an application for a stay pending review pursuant to the Rules of Appellate Procedure is within the appellate, not the original, jurisdiction of Commonwealth Court.[2]

2. An application for a stay or supersedeas is not under 42 Pa.C.S. § 761(c) which gives the Commonwealth Court original jurisdiction of cases involving mandamus and prohibition to a government unit "where such relief is ancillary to matters within its appellate jurisdiction, . . . ."

■ Since the application for a stay is within the appellate rather than the original jurisdiction of Commonwealth Court, the Department does not have an appeal as of right to this Court. The Department asserts that this Court has jurisdiction of its appeal under Pa.R.A.P. 311(a)(4). Rule 311(a)(4) provides for an interlocutory appeal as of right from "an order granting continuing, modifying, refusing or dissolving injunctions, or refusing to modify or dissolve injunctions." As a practical matter, this Court cannot interpret Rule 311(a)(4) to also permit interlocutory appeals of right from the grant or denial of a stay or supersedeas by Commonwealth Court.

■ However, since Judge Blatt determined that her interlocutory order granting a stay involved a controlling question of law as to which there is a substantial ground for difference of opinion, this Court in its discretion may permit the appeal from such interlocutory order. 42 Pa.C.S. § 702(b). We will do so in this case.

The Department argues that the Board of Claims has exclusive jurisdiction over all claims involving contracts with the Commonwealth under 72 P.S. § 4651-1, *et seq.*[3] Because the instant matter involved a contract between appellee and the Commonwealth, the Department concludes that the Commonwealth Court lacked subject matter jurisdiction. Appellee acknowledges that the Board of Claims has exclusive jurisdiction over contractual disputes with the Commonwealth. It contends, however, that its claim challenges the Department's power to revoke a license without a pre-revocation hearing under § 3761-7(b) of the State Lottery Law. Such constitutional claims, appellee concludes, cannot be addressed by the Board of Claims and are, consequently, properly raised before Commonwealth Court.

■ This Court has consistently held that the exclusive forum and remedy for all claims of $300.00 or more arising out of contracts with the Commonwealth is an action in the Board of Claims for monetary damages. Act of May 20,

---

**3.** Act of October 5, 1978, P.L. 1104, No. 260, § 3, *as amended.*

1978, P.L. 1104, No. 260, § 3, 72 P.S. § 4651–4. *See Ezy Parks v. Larson,* 499 Pa. 615, 454 A.2d 928 (1983) (collecting cases). However, in *Ezy Parks* we posited a constitutional limitation on the Board of Claims' jurisdiction, a limitation which is inherent because the only remedy available in the Board of Claims is monetary damages:

> Of course, we do not intimate that the legislature can deprive equity of jurisdiction and limit the remedy to only monetary damages in all cases, including those where a fundamental constitutional right for which such damages would be inadequate was irreparably threatened. We simply follow *Emergency Medical Services [Council of Northeastern Pa., Inc. v. Dept. of Health,* 499 Pa. 1, 451 A.2d 206] and *Clark v. Pennsylvania State Police* [496 Pa. 310, 436 A.2d 1383] in holding that the opportunity to obtain monetary relief in the Board of Claims for interference with their contract right is adequate.

*Ezy Parks,* 499 Pa. at 628, 454 A.2d at 935.

If a person is to be afforded a meaningful opportunity to assert a claim that the Commonwealth has violated fundamental constitutional rights, the Commonwealth Court must have jurisdiction, in reviewing agencies decisions, to determine whether such a constitutional claim is substantial and whether the legal remedy for damages before the Board of Claims is adequate. Cf. *Shenango Valley Osteopathic Hospital v. Department of Health,* 499 Pa. 39, 451 A.2d 434 (1982). In that case we held the doctrine of exhaustion of remedies does not bar equitable intervention where both a substantial question of constitutionality and the absence of an adequate statutory remedy are present. *See also Department of Public Welfare v. Eisenberg,* 499 Pa. 530, 454 A.2d 513 (1982) (concurring opinion by Mr. Justice, now Chief Justice, Roberts in which O'Brien, C.J., and Larsen, Flaherty and Hutchinson, JJ., joined). We review appellant's challenge under that standard.

Thus, while we need not decide the merits of the constitutional question raised by appellee we must initially

determine whether it is a substantial one.[4] Appellee's action in Commonwealth Court is based on a license for an undefined term, not simply a contract with a set or determinable termination date. Generally speaking a license granted by a sovereign is "a permission by a competent authority to do some act which without such authorization would be illegal..." Black's Law Dictionary (Rev'd. 4th Ed.1968). Government licenses generally constitute a form of property insofar as they are an entitlement to engage in a valuable activity. The grant of certain types of licenses, particularly a license to engage in a profession or occupation, may create a right or entitlement which triggers procedural rights under the due process clause of the Fourteenth Amendment. The government cannot, on the one hand, create a business which is dependent on a permit and then, with the other, destroy it by revoking the authorizing permits without first affording "sufficient" due process. *Doran v. Houle,* 516 F.Supp. 1231 (D.Montana 1981) (citing *Standard Airlines, Inc. v. Civil Aeronautics Board,* 177 F.2d 18 [D.C.Cir.1949]; *Gonzalez v. Freeman,* 334 F.2d 570 [D.C.1964] ). Thus, the government must have a fair procedure to determine whether driver's, occupational or business licenses should be revoked. Nowak, *Constitutional Law* at 515 (2d Ed.1983) (citing *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 [1971] and *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 [1968] ); *Doran v. Houle, supra. See also Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979).

In *Greco v. Commonwealth,* C.A. 80–1817 (W.D.Pa. April 21, 1981) (memorandum opinion), the United States District Court considered the Department of Revenue's motion to dismiss a licensee's complaint claiming a due process violation because the Department failed to provide a pre-suspen-

4. This inquiry is necessary not only to determine initially whether Commonwealth Court has jurisdiction of the matter but also to determine whether it abused its discretion in granting a stay. *See infra* p. 379.

sion hearing before it suspended plaintiff-licensee's lottery license. That court stated:

The Court has carefully examined the State Lottery Law and has determined that there is no provision for notice or a hearing prior to the suspension of a lottery sales license. 72 P.S. § 3671–7(b). The minimum requirements of due process under the United States Constitution are notice of the basis of governmental action and an opportunity to be heard. *Wolff v. McDonnell,* 418 U.S. 539 [94 S.Ct. 2963, 41 L.Ed.2d 935] (1974). The record reveals that the plaintiff was afforded neither notice or a hearing prior to the suspension, and eventual revocation, of his license.

The lack of notice and prior hearing, however, are of no constitutional moment unless a legitimate, protected, property right has been infringed. *Board of Regents v. Roth,* 408 U.S. 564, 570 [92 S.Ct. 2701, 2705, 33 L.Ed.2d 548] (1972). Describing the nature of such a property interest, the Court stated in *Board of Regents v. Roth* that, "[t]o have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must instead have a legitimate claim of entitlement to it." *Id.* at 577 [92 S.Ct. at 2709].

While the deprivation of property rights without prior notice and hearing has occasionally been upheld by the Supreme Court, the preference is clearly in favor of such prior hearing in the absence of extenuating private or public interests of overriding significance. *Fitzgerald v. Mountain Laurel Racing, Inc.,* 464 F.Supp. 263 (W.D.Pa. 1979). Whether a licensed lottery sales agent has a protected property interest in the continued sale of lottery tickets, and whether such a property interest requires a pre-revocation notice and opportunity for a hearing are questions which go to the substantive merits of the plaintiff's claim.

*Greco, supra,* at ——.[5]

Subsequently, on June 14, 1983, in *Greco,* on defendant Department's motion for summary judgment, the United States District Court dismissed plaintiff's complaint, holding that the property interest in a license to sell lottery tickets did not require the Commonwealth to hold a predetermination hearing before it suspended plaintiff's license. The District Court held that a hearing six weeks after the suspension and the Commonwealth's filing of an extensive report before formal revocation satisfied plaintiff's due process rights. *Greco,* like *Eisenberg, supra,* which the District Court cited with approval, involved a temporary pre-hearing suspension, not a final revocation. The District Court's holding in *Greco* is consistent with United States Supreme Court authority establishing the "ordinary principle that something less than an evidentiary hearing is required before adverse administrative action, so long as prompt post-deprivation review is available for correction of administrative error." *See Mackey v. Montrym, supra.*

In the case before us the Department of Revenue advised appellee by letter of July 8, 1982 that its license had been revoked effective July 19, 1982 and that that letter constituted a "final" determination by the Bureau of State Lotteries. Thereafter, the Department denied appellee's subsequent request for a hearing. Thus, in the present case, unlike *Greco,* appellee's license was finally revoked without providing appellee with the opportunity to be heard either before or after the revocation.[6]

5. It is significant to note that the State Lottery Law does not mandate revocation of appellee's license. Rather, the Secretary of Revenue "may suspend or revoke a license ... if it shall find the applicant or licensee (1) has been convicted of a crime involving moral turpitude...."

6. While it is arguable that no hearing is required following revocation of license pursuant to a statute which mandates revocation upon the license holder's conviction of a crime, *see generally* Anno.: Revocation of Liquor License—Hearing, 35 ALR2d 1082 (1954), that is not the case here. The pertinent provision of the State Lottery Law permits suspension upon conviction of a crime only after an exercise of discretion by the Secretary.

■ While we agree with the *Greco* court that the suspension of a license to sell lottery tickets does not require a predetermination hearing, due process may require that the licensee be afforded an opportunity to be heard before final revocation. A lottery license which permits the licensee to sell state lottery tickets and to receive a commission from the Commonwealth on each sale has features of both a license and a contract between the Commonwealth and the licensee.

■ With respect to the requirement that the legal remedy before the Board of Claims must be inadequate before the Commonwealth Court has jurisdiction, the adequacy of a licensee's remedy in the Board of Claims for revocation of a license for an indefinite term is doubtful. That Board has jurisdiction only of claims arising under "contracts" and then only to award money damages.[7] It has no authority to order the Department to hold a hearing. Moreover, the Department has discretion to terminate the license subject to whatever procedural due process the Pennsylvania and United States Constitutions require before revocation of a license. *See Mackey v. Montrym, supra.* Finally, appellee is not seeking monetary damages. Moreover, appellee is not arguing that the Commonwealth Court can enjoin termination of its license following a due process hearing, or that such termination would constitute a breach of contract. Appellee seeks only a hearing before the Department, a hearing to which the corporation claims it is entitled under the Due Process Clause of the Fourteenth Amendment. The Board would be powerless to determine the constitutional question of whether due process requires a hearing

7. Disputes arising between lottery licensees and the Bureau over relative obligations may be contractual in nature. In *Transamerica Insurance Co. v. Judie, Inc.,* 30 Pa. Commonwealth Ct. 259, 373 A.2d 478 (1977), the Commonwealth assigned its right to collect the purchase price of 475 lottery tickets which a licensee had reported stolen. In response to an assumpsit action to recover the purchase price of the tickets, the licensee joined the Bureau, asserting that by invalidating the stolen tickets it precluded licensee's opportunity to win the lottery. Commonwealth Court correctly held that the licensee's claim was contractual in nature and, therefore, properly within the jurisdiction of the Board of Claims.

or to grant meaningful relief for the Bureau's refusal to provide one. Consequently, Commonwealth Court had power to hear the merits of this case within its appellate jurisdiction to review appellant's refusal to grant appellee a pre-revocation hearing. *See O'Brien v. State Employes' Retirement System*, 503 Pa. 414, 469 A.2d 1008 (1983).

In the procedural posture of an appeal from the grant of a stay, the constitutional question is not ripe for our decision. Indeed, Commonwealth Court did not answer the constitutional question. It merely determined appellee's arguments had arguable merit.

■■■■■■ It does not follow, however, that because Commonwealth Court had jurisdiction to hear appellee's constitutional claim, that it must *a fortiori* grant a stay. Thus, we must review Commonwealth Court's grant of a stay to determine first whether it applied the proper standard for a stay and, second, considering the proper standard, whether Commonwealth Court abused its discretion when it granted one to appellee.

In granting a stay in this case Commonwealth Court erroneously followed *Allets, Inc. v. Penn Township Board of Supervisors*, 67 Pa. Commonwealth Ct. 326, 328, 447 A.2d 329, 350 (1982), which held that a stay will be granted:

> (1) if the appeal appears to present a question which is meritorious, not frivolous;

> (2) if any detriment to interested parties resulting from a stay would be less than the harm resulting from a denial of it; and

> (3) if the public interest would not be adversely affected by a stay.

This standard is incorrect. It is not enough to present an issue which is not frivolous. We now require a person seeking a stay to make a strong showing that he is likely to prevail on the merits as well as to show irreparable harm and that the stay will not substantially harm other interested parties or the public interest. *See Pennsylvania Public Utility Commission v. Process Gas Consumers Group,*

502 Pa. at 808–09, 467 A.2d at 808–09 (citing *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841 [D.C.Cir.1977] and *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921 [D.C.Cir.1958]).[8] We are convinced that appellee failed to satisfy the Process Gas standard and, therefore, Commonwealth Court abused its discretion in granting the stay.

Appellee has not shown irreparable harm. Its license could have been suspended without a hearing. *See Greco v. Commonwealth, supra.* Damage suffered as a result of an excessive temporary suspension is measurable in monetary terms unless the suspension is so inordinately long as to amount to a revocation. Appellee's right to prior hearing applies only to revocation and the denial of such hearing can be reviewed only in Commonwealth Court.[9] If the Department of Revenue had suspended appellee's license without a prior hearing, under *Greco* it should be entitled at most to a prompt post-suspension hearing prior to final revocation. Due process does not require that the Department permit appellee to operate under the license pending a post-suspension, pre-revocation hearing. Thus, in the present case, Commonwealth Court could provide an adequate remedy for the due process claim by vacating the Department's revocation order, permitting the Common-

**8.** Under the full test set forth in *Pennsylvania Public Utility Commission v. Process Gas Consumers Group,* the grant of a stay is warranted only if:
  1. The petitioner makes a strong showing that he is likely to prevail on the merits.
  2. The petitioner has shown that without the requested relief, he will suffer irreparable injury.
  3. The issuance of a stay will not substantially harm other interested parties in the proceedings.
  4. The issuance of a stay will not adversely affect the public interest.
  *Id.*

**9.** We note that appellee has retained its license up to this point under the stay. Thus, if Commonwealth Court or the Department act promptly to afford appellee a departmental hearing the temporary pre-hearing deprivation may not be unreasonably long and so tantamount to revocation.

wealth to suspend the license and ordering it to hold a prompt hearing prior to revocation. Accordingly, the Commonwealth Court's order granting a stay is reversed and the record remanded to it for further proceedings consistent with this opinion.

ROBERTS, C.J., files a concurring opinion in which LARSEN, J., joins.

McDERMOTT, J., files a concurring and dissenting opinion.

NIX, J., did not participate in the consideration or decision in this case.

ROBERTS, Chief Justice, concurring.

Although I agree with the majority that this Court is without direct appellate jurisdiction in this case, I do not agree with the reasoning employed by the majority in reaching this conclusion. In seeking judicial review of the determination of the Department of Revenue to revoke appellee's lottery license, appellee properly exercised its right to appeal to the Commonwealth Court from an "adjudication" of an administrative agency. See 42 Pa.C.S. § 702. Contrary to the view of the majority, the right to appeal from an administrative adjudication is not dependent upon a showing that a "substantial constitutional question" is present, any more than is a party's right to appeal to an appellate court from a determination of a court of common pleas. Rather, under the express terms of section 702, that right is absolute.*

As to the stay of the revocation of appellee's lottery license, I would treat the Department of Revenue's notice

---

* Of course, when, in conjunction with an appeal under section 702, a party seeks a stay of an administrative agency's order, the substantiality of the question presented may become relevant because the appellant must demonstrate likelihood of success on the merits to be entitled to the stay. See *Pa. Public Utility Commission v. Process Gas*, 502 Pa. 545, 467 A.2d 805 (1983). Such an inquiry, however, is manifestly irrelevant to the determination of the party's right to take the appeal in the first instance.

of appeal as a petition for review pursuant to Pa.R.A.P. 3315 and set the stay aside. Appellee has failed to establish the existence of a right to a hearing prior to the suspension of its lottery license. See generally *Dept. of Public Welfare v. Eisenberg,* 499 Pa. 530, 454 A.2d 513 (1982) (Roberts, J., concurring, joined by O'Brien, C.J., Larsen, Flaherty, and Hutchinson, JJ.); *Commonwealth v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980). Nor has appellee established any likelihood that it will prevail on the merits of its challenge to the revocation of its license at the pre-revocation hearing to which it is entitled. See *Pa. Public Utility Commission v. Process Gas,* supra.

Accordingly, I concur only in the result.

LARSEN, J., joins in this concurring opinion.

McDERMOTT, Justice, concurring and dissenting.

As the majority correctly notes, an application for a stay is ancillary to an appeal. *See* Pa.R.A.P. 1702; 1781. Consequently, the validity of any such application necessarily depends upon whether the court to which the underlying appeal has been taken, has jurisdiction of the subject matter.

On the other hand, a request for a preliminary injunction is an original action which, in the situation where the party sought to be enjoined is the Commonwealth, is an action falling within the original jurisdiction of the Commonwealth Court. *See* 42 Pa.C.S. § 761(a).

Thus, the threshold question in this case is whether the Commonwealth Court had the subject matter jurisdiction to entertain appellee's petition for review from the department's decision to revoke its license. I think not.

It is unquestioned that the basis for appellee's claimed property right was a contract entered into between itself and the Commonwealth. *See Transamerica Ins. Co. v. Judie, Inc.,* 30 Pa.Cmwlth. 259, 373 A.2d 478 (1977). Pursuant to that contract the licensee agreed to comply with all

the terms of the State Lottery Law.[1] 72 P.S. § 3761-1 *et seq.* In return for this agreement, and in consideration of other terms not here relevant, the Commonwealth conferred upon appellee the benefit of a license to sell lottery tickets. However, the Commonwealth, after having learned of appellee's convictions on charges of theft by deception, revoked that license, thereby denying it the benefit of the contract. If, as appellee claims, this denial was improper, the remedy, as I see it, would be a breach of contract claim. By law such a claim, when brought against a Commonwealth agency, must initially be brought in the Board of Claims. 72 P.S. 4651-4.[2] *See Ezy Park v. Larson,* 499 Pa. 615, 454 A.2d 928 (1983).[3]

If, as appellee further argues, it was entitled to have its breach claim resolved *prior* to a revocation, the corporation would have the option of going to the Commonwealth Court to seek a preliminary injunction against any intervening action sought to be taken by the Department.

I see no constitutional problems with proceeding in this manner, since appellee would be granted its opportunity to be heard, in a forum empowered to grant an adequate remedy, i.e., monetary damages.[4] At the same time appellee would retain its equitable action in the Commonwealth Court to seek a permanent injunction against the proposed revocation should the breach claim be successful.

Although one may criticize this perceived splitting of the cause of action, such criticism should not be directed here.

1. Act of August 26, 1971, P.L. 351, No. 91, § 1 *et seq.*

2. Act of October 5, 1978, P.L. 1104, No. 260 § 3 *as amended.*

3. From an adverse determination on the merits by the Board the appellee would still retain its constitutionally guaranteed right of appeal to the Commonwealth Court. *See* 2 Pa.C.S. § 701 *et seq.;* 42 Pa.C.S. § 763.

4. The majority's decision seems to dictate the anomalous result of requiring the department to develop and implement hearing procedures, where they have not previously been required, while the legislatively created Board of Claims will sit idle, wasting its acquired expertise.

It is the legislature which has set the jurisdictional limits of the Commonwealth Court and Board of Claims. We are called upon only to interpret those enactments. It is beyond our power to rewrite those acts merely because we would have it differently.[5]

Furthermore, despite the labels attached to this application by the parties below,[6] it appears that Judge Blatt considered the request as one for an injunction, rather than as a stay. In this regard, I note that she described the proceeding as one coming under the Commonwealth Court's *original jurisdiction*, 42 Pa.C.S. § 761, Memorandum Opinion at 4; and imposed upon the Commonwealth the affirmative duty of reinstating appellee's license.[7]

I would treat this case as a direct appeal from an original action for preliminary injunctive relief commenced in the Commonwealth Court. However, since our decision in *Pennsylvania Public Utility Commission v. Process Gas*, 502 Pa. 805, 467 A.2d 805 (1983), the standards for reviewing a request for a stay are substantially similar as those for reviewing a request for a preliminary injunction. *Compare Gillette Company v. Master*, 408 Pa. 202, 182 A.2d 734 (1962). Therefore, I agree with the majority's analysis regarding the propriety of a "stay" in this case, and I concur in the decision to reverse.

Finally, I would emphasize that the question of whether due process requires hearings prior to suspension and/or revocation, remains for the Commonwealth Court, as does the question as to whether the license at issue is or is not a property right. *See* Majority Opinion at 380.

5. I wish to emphasize that the statutory scheme set up by the legislature seems quite adequate, and I in no way intend my comments as critical of the system they have devised.

6. We are clearly not bound by the labels which the parties affix to their filings. *See Pomerantz v. Goldstein*, 479 Pa. 175, 387 A.2d 1280 (1978).

7. In this regard the majority correctly notes that "appellee sought injunctive relief." Majority Opinion at 372.

Insofar as the majority has decided that the "stay" entered by the Commonwealth Court should be vacated, I concur in the decision to reverse. I do not, at this juncture, wish to express a definitive opinion on the merits of the appellee's due process claim.