537 A.2d 903

Triage, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Transportation, Respondent.

Argued November 16, 1987, before Judges MAC-PHAIL and DOYLE, and Senior Judge NARICK, sitting as a panel of three.

*Joseph A. Meo, Markovitz & Meo,* for petitioner.

*Kate L. Mershimer,* Deputy Attorney General, with her, *Andrew S. Gordon,* Chief Deputy Attorney General, *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY SENIOR JUDGE NARICK, February 10, 1988:

Petitioner Triage, Inc. (Triage) filed a petition for review in this Court's original jurisdiction in the nature of

actions in mandamus, declaratory judgment and equity. Respondent, Commonwealth of Pennsylvania, Department of Transportation (DOT), in response to Triage's petition for review, has filed preliminary objections and a motion to quash. Triage then filed preliminary objections to DOT's preliminary objections and an answer to DOT's motion to quash. Triage also filed with its responsive pleadings, an appendix to its brief which included various documents not attached to the original pleadings filed by Triage. Thereafter, DOT filed a motion to strike Triage's appendix.

Triage is a private transportation company which provides "shared-ride" transportation to senior citizens under the Pennsylvania Urban Mass Transportation Law (PUMTL), Act of January 2, 1968, P.L. 42, *as amended*, 55 P.S. §§600.100-600.407 (Supp. 1987). DOT is the government agency statutorily authorized to administer the "shared-ride" program also known as the "203" program.[1] Under the "203" program, a senior citizen pays $.25 or 10% of the cost of an individual fare, whichever is greater. As long as a transportation company does not exceed certain reimbursement limitations, DOT will reimburse the transportation company for 90% of the fare.[2]

The events leading to Triage's filing of a petition for review on May 12, 1987 can be divided into two categories: (1) Triage's and DOT's interactions regarding "shared-ride" services in Philadelphia County; and (2) Triage's and DOT's interactions regarding the extension of "shared-ride" services to Delaware County.

---

[1] Section 203(5)(v) of PUMTL, 55 P.S. §600.203(5)(v).

[2] These reimbursement limitations are set forth in the DOT regulations found at 67 Pa. Code §425.6. These regulations became effective February 1, 1986. Prior to the enactment of these regulations the reimbursement limitations were set forth in DOT's 203/406 Directives.

The background of this case is somewhat complicated; therefore, we will commence with a summarization of the petition for review filed by Triage. Triage first asserts with respect to "shared-ride" services in Philadelphia County that an action in mandamus lies against DOT because DOT has wrongfully refused to reimburse Triage for "203" services it provided. More specifically, Petitioner asserts in the petition for review that "On September 21, 1984, Triage and the Department entered into a written Section 203 Program Agreement" and that "On August 16, 1985 Triage and the Department entered into a written Section 203 Program Agreement".[3] Both contracts are attached to the petition for review and essentially provided that Triage would receive reimbursement from DOT not to exceed 90% of the regular adult fare rate. Losses were reimbursable only if each senior citizen or a third party sponsor, previously approved in writing by the Commonwealth, paid $.25 or 10% of the regular adult fare, whichever was greater. The September 21, 1984 contract also provided that Triage must comply with the "203" program guidelines and procedures, and DOT's Section 203/406 Directives. The August 16, 1985 contract provided that in the event the Commonwealth promulgated regulations governing the "203" program, the provisions of paragraphs 14 through 21 would be superseded by the regulations.[4] Thus, the September 21, 1984 contract

---

[3] The time period for the September 21, 1984 contract was July 1, 1984-June 30, 1985. The contract was subsequently amended to extend the contract period to July 31, 1985. The time period for the August 16, 1985 contract was from August 1, 1985 to December 31, 1985. The contract was subsequently amended to extend the contract period until June 30, 1986. Several other amendments not relevant therein were also made to the contracts.

[4] DOT's regulations became effective on February 1, 1986. Therefore, from that point until the contract's expiration on June 30, 1986, the regulations applied to the contract. We should note that

was subject to compliance with DOT's Section 203/406 Directives and the August 16, 1985 contract was subject to compliance with DOT regulations once they became effective on February 1, 1986.[5]

According to Triage, DOT has refused to reimburse Triage for "203" services in Philadelphia County because (1) the Philadelphia Corporation for the Aging (PCA) was not an approved third party sponsor and (2) pursuant to an administrative freeze no reimbursement funds would be forthcoming. Triage argues that PCA did not require approval by DOT under DOT's 203/406 Directives and regulations because PCA is an Area Agency on Aging. Triage further complains that DOT's actions are in violation of statute and DOT's regulations.

Triage further avers that an action in mandamus lies against DOT because DOT has refused to approve expansion of Triage's "203" services to Delaware County. Triage asserts that pursuant to a letter dated April 25, 1985 Triage requested DOT to extend its "203" program approval to Delaware County. By letter dated May 10, 1985 DOT denied the request alleging that an administrative freeze mandated denial of the request for expansion. On July 18, 1985 DOT forwarded applications for the "203" program to Triage for fiscal year 1985-1986. Triage submitted an application to provide "shared-ride" services in both Philadelphia and Delaware Counties. Triage thereafter provided transportation services in both Philadelphia and Delaware Counties. On January 22, 1986 DOT notified Triage it would not be reimbursed for services provided in Delaware County. On February 10, 1986 Triage notified DOT that it protested

---

DOT's regulations were recently determined to be constitutional by our Supreme Court in *Brocal Corp. v. Department of Transportation*, 515 Pa. 224, 528 A.2d 114 (1987).

[5] Paragraphs 14 through 21 of the August 16, 1985 contract are essentially a reiteration of DOT's Section 203/406 Directives.

DOT's decision to deny approval for service in Delaware County. By letters dated February 20, 1986 and March 25, 1986, DOT reconfirmed its refusal to reimburse Triage for "203" services provided in Delaware County. On April 14, 1986 DOT also forwarded a letter to Triage requesting reimbursement from Triage of $54,123.20 for services provided in Delaware County. Triage contends that DOT's actions are arbitrary, capricious and in violation of statutory mandate.

Triage next asserts in its petition for review a cause of action in the nature of declaratory judgment on the grounds that Section 203(5)(v) of PUMTL, 55 P.S. §600.203(5)(v) is unconstitutional and overbroad; and that a cause of action in equity exists against DOT based upon DOT's refusal to reimburse Triage for "203" services provided by Triage in Philadelphia and Delaware Counties.

First, we must address DOT's application to strike the appendix filed by Triage in conjunction with its response to DOT's preliminary objections. DOT alleges that Triage's appendix contained one affidavit and fifteen documents which were not part of Triage's petition for review; and therefore these documents were improperly submitted to this Court. It is provided in Pa. R.C.P. No. 1019(h) that "a pleading shall state specifically whether any claim or defense set forth therein is based upon a writing. If so, the pleader shall attach a copy of the writing, or the material part thereof . . .". The requirement of 1019(h) is applicable to all pleadings. Goodrich-Amram 2d §1019(h):1. Therefore, any writing relied upon by Triage should have been attached to its petition for review. If Triage desired to present additional documents to the Court, the proper procedure was to file an amended pleading. Pa. R.C.P. No. 1028(c) and (e). *Cf. Goldman v. Schlanger*, 49 D. & C. 2d 225 (1970). Accordingly, the application of DOT to strike this appendix is hereby granted.

The next matter presented for our resolution is Triage's preliminary objections to DOT's preliminary objections. Triage contends that DOT's preliminary objections should be dismissed because they are untimely and because they do not conform with Pa. R.C.P. No. 1017(b) and Pa. R.C.P. 1030. We point out that Triage's filing of preliminary objections were a proper response to DOT's preliminary objections. *See Chambers Development Co., Inc. v. Department of Environmental Resources,* 110 Pa. Commonwealth Ct. 432, 532 A.2d 928 (1987); *Globe Disposal Co., Inc. v. Department of Environmental Resources,* 105 Pa. Commonwealth Ct. 599, 525 A.2d 437 (1987); Pa. R.C.P. No. 1017.[6]

However, before proceeding further, we should summarize the preliminary objections and motion to quash filed by DOT.[7] DOT preliminarily objected to Triage's petition for review on the grounds that jurisdiction is properly with the Board of Claims; that to the extent Triage's claims are within this Court's original jurisdiction, Triage failed to institute its cause of action within the applicable six month statute of limitations; that to the extent Triage's claims are within this Court's original jurisdiction they are barred by sovereign immunity; and that a demurrer should be granted because contrary to Triage's assertions, Section 203(5)(v) of the PUMTL is constitutional on its face.

In its motion to quash, it is DOT's contention that Triage seeks review of final determinations of DOT

---

[6] We should also note that in response to DOT's motion to quash, Triage filed an answer which essentially denied the allegations set forth therein as conclusions of law to which no response was required.

[7] We note that in reviewing preliminary objections only facts that are well pleaded, material and relevant are considered as true, and that preliminary objections will only be sustained if clear and free from doubt. *See Globe Disposal.*

which fall within this Court's appellate jurisdiction. Thus, according to DOT, because Triage failed to file a petition for review within thirty days of these final determinations, Triage's cause of action is not within the mandatory thirty day statute of limitations set forth in Pa. R.A.P. 1512.[8] We also note that DOT refers to a letter from DOT to Triage dated March 16, 1987 which denied Triage's request for a hearing. DOT further asserts that to the extent Triage seeks review of this March 16, 1987 order, the petition for review was untimely filed. Triage also addresses the March 16, 1987 letter in its petition for review. However, it is Triage's position that DOT's actions in denying reimbursement for services as well as denying an expansion of services is in violation of its statutorily mandated duties; and therefore, the cause of action filed by Triage falls within this Court's original not appellate jurisdiction. Triage contends that the March 16, 1987 letter only concerns Triage's request to expand services to Delaware County and fails to discuss Triage's request for reimbursement of the PCA-sponsored services provided in Philadelphia County. Triage goes on to argue that the March 16, 1987 letter was an invalid adjudication and therefore the applicable statute of limitations was tolled.[9]

---

[8] The final determinations referred to by DOT are letters from DOT to Triage dated August 22, 1985, September 25, 1985 and May 8, 1986 regarding DOT's refusal to reimburse Triage for services provided in Philadelphia County and letters dated May 10, 1985, January 22, 1986, February 20, 1986 and March 25, 1986 regarding DOT's refusal to permit Triage to offer "shared-ride" services in Delaware County.

[9] The March 16, 1987 letter from DOT to Triage relevantly provides:

After a careful review of the above referenced Petition, it is clear that Triage, Inc. does not possess a legitimate claim of entitlement to the relief requested under Pennsylvania law. Simply stated, the decisions by the Department not to

Regarding the timeliness of DOT's preliminary objections, we recognize that the petition for review was filed by Triage on May 12, 1987 and that DOT filed preliminary objections on June 15, 1987, clearly beyond the thirty day mandatory appeal period set forth in Pa. R.A.P. 1516(c). Additionally, we agree with Triage that the defenses of sovereign immunity and statute of limitations are matters properly raised in new matter[10] and not preliminary objections.[11] Although a party can raise the issue of sovereign immunity in preliminary objections if the defense of sovereign immunity is clear on the face of the pleadings, *Ziccardi v. School District of Philadelphia*, 91 Pa. Commonwealth Ct. 595, 498 A.2d 452 (1985), we conclude that DOT has waived this defense for two reasons. Firstly, DOT does not set forth the issue of sovereign immunity in its "Statements of Questions Involved" in violation of Pa. R.A.P. 2116.[12]

---

extend Triage's Section 203 reimbursable service area into Philadelphia and Delaware Counties and to request reimbursement of monies tendered for services in Delaware County prior to the approval by the Department of that County as a Triage, Inc. Section 203 service area, do not constitute an 'adjudication' for the purposes of the Administrative Agency Law and 67 Pa. Code §425.15. They instead represent ministerial determinations by the Department in the course of its administration of the Section 203 Program.

[10] *See* Pa. R.C.P. No. 1030.

[11] *See* Pa. R.C.P. No. 1017(b).

[12] Pa. R.A.P. 2116 pertinently provides:

(a) General rule. The statement of the questions involved must state the question or questions in the briefest and most general terms . . . It should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. *This rule is to be considered in the highest degree mandatory, admitting of no exception;* ordinarily no point will

Secondly, DOT asserts in the "Statement of the Case" portion of its brief that without waiving its right to raise the defense of sovereign immunity at a later date, it has elected not to brief this issue. We do not believe DOT can elect not to brief an issue without waiving that issue; DOT's actions are contrary to Pa. R.A.P. 2116-2119. Nevertheless, because DOT is not required to file an answer to Triage's petition for review until the preliminary objections are resolved, DOT can raise this sovereign immunity issue in its answer to the petition for review even though the issue is waived as it relates to the preliminary objections. Pa. R.C.P. No. 1028(d); *also see Delaware County Solid Waste Authority v. Township of Earl, Berks County,* 112 Pa. Commonwealth Ct. 76, 535 A.2d 225 (1987). Therefore, we sustain Triage's objections to DOT's preliminary objections as to timeliness and failure to conform with Pa. R.C.P. No. 1017(b) and Pa. R.C.P. No. 1030. DOT's preliminary objections are dismissed.

Triage alleges in its petition for review that DOT has wrongfully refused to approve PCA as a third party sponsor for the fiscal year ending July 31, 1985 (resulting in a loss of reimbursement funds to Triage of approximately $44,016.30) and the period August 1, 1985 through January 31, 1986 (resulting in a loss of reimbursement funds of approximately $160,737.30). There is no dispute that DOT has approved PCA as a third party sponsor for services provided after February 1, 1986. The contract initially entered into between DOT and Triage on September 21, 1984 made reimbursement for "203" services contingent upon compliance with DOT's Section 203/406 Directives. Thus, this contract was for the time period July 1, 1984 through

---

be considered which is not set forth in the statement of questions involved or suggested thereby . . . (Emphasis added.)

July 31, 1985, prior to the enactment of DOT's regulations, 67 Pa. Code §§425.1—425.16. The Section 203/ 406 Directives pertinently provide: "(1) Applicant Procedures . . . Letter D. Reimbursement is dependent upon completion of Commonwealth execution of the grant agreement. First time applicants initiating service prior to completion of the grant execution process do so at their own risk".

The second contract entered into between DOT and Triage on August 16, 1985 did not specifically state that reimbursement was contingent upon compliance with the Directives. The second contract was for the time period August 1, 1985 through December 31, 1985.[13] This contract provides that third party sponsors must receive the written approval of DOT. With respect to Triage's allegations that it is exempt from receiving third party sponsor approval because PCA is an Area Agency on Aging, the contract provides that "area agencies on aging may reimburse low income senior citizens . . . for the passenger share . . .". Thus, we conclude that Triage's right to reimbursement is based on contract. We further note that both the September 21, 1984 and the August 16, 1985 contracts provided that any disputes arising under the contracts would be subject to the jurisdiction of the Board of Claims. The Act of May 20, 1937, P.L. 728, *as amended,* October 5, 1978, P.L. 1104, *as amended,* 72 P.S. §4651-1 states that the duty of the Board of Claims is "to arbitrate claims against the Commonwealth arising from contracts entered into by the Commonwealth . . .". Therefore, pursuant to 42 Pa. C. S. §5103 we will transfer this matter to the Board of Claims.[14] It is our conclusion that a contract existed be-

---

[13] As previously noted, the contract does indicate that upon adoption of DOT regulations that these regulations will be applied to the contract; and thus reimbursement would be contingent upon compliance with the regulations.

[14] It appears that Triage has already initiated a cause of action against DOT in the Board of Claims regarding this matter.

tween DOT and Triage; and therefore, it is for the Board of Claims to determine whether Triage's cause of action was timely filed and whether Triage was entitled to reimbursement.

Regarding DOT's refusal to reimburse Triage for services provided in Delaware County (Triage alleges a loss of reimbursement funds of approximately $62,374.61) we must also conclude that Triage's right to reimbursement was based upon contract. Upon Triage's receipt of a "203" application from DOT in July 1985, Triage timely filed its application to provide services not only in Philadelphia County but also in Delaware County for the following fiscal year. Triage's request to provide services in Delaware County received no response from DOT until January 22, 1986 when DOT notified Triage it would not be reimbursed for Delaware County services. Thus, the approximate time period involved here is July 1985 through January 1986, prior to the effective date of DOT's regulations. It is also important to point out that DOT did reimburse Triage for services provided in Delaware County until January 22, 1986. However, by letter dated April 14, 1986, DOT requested reimbursement of this money.[15] Triage contends that it did not require approval to expand its services to Delaware County because Triage was not a first time applicant; that by filing an application it had the right to reimbursement; and that DOT's failure to grant Triage this expansion of services is in violation of statute and DOT's regulations. If Triage was not a first time applicant then its right to reimbursement emanates from the "203" contract agreements.[16] Therefore, we will transfer

---

[15] Triage is also contesting DOT's authority to request this reimbursement.

[16] It is also suggested that the filing of the application by Triage and DOT's initial reimbursement for the Delaware County services established a right in Triage to continued reimbursement.

this matter to the Board of Claims pursuant to 42 Pa. C. S. §5103 to determine whether Triage's cause of action was timely filed as to whether Triage was entitled to reimbursement.

However, before we can conclude, Triage also raises two additional questions which we must consider: (1) whether Section 203(5)(v) of PUMTL is constitutional on its face and (2) whether Triage has an adequate remedy at law. Triage asserts in its petition for review that Section 203(5)(v) of PUMTL is unconstitutional and invalid as overly broad in that DOT's rules and regulations are an unconstitutional delegation of legislative power which is violative of due process. Triage does not elaborate on the unconstitutionality of Section 203(5)(v) of PUMTL in its brief.[17] It has been held that this Court may address the constitutionality of a statute although jurisdiction lies with an administrative agency. *See Young J. Lee, Inc. v. Department of Revenue, Bureau of State Lotteries,* 504 Pa. 367, 474 A.2d 266 (1983); *Shenango Valley Osteopathic Hospital v. Department of Health,* 499 Pa. 39, 451 A.2d 434 (1982). We do not find that Section 203(5)(v) of PUMTL is violative of due process or overbroad.[18] Also, because we have concluded that Triage's cause of action is one based

---

[17] Rather, in that portion of its brief regarding the unconstitutionality of Section 203(5)(v) of PUMTL, Triage addresses DOT's allegations that Triage has failed to specify in its pleadings which regulations it challenges.

[18] Section 203(5)(v) of PUMTL provides:

The department shall promulgate such rules and regulations as are necessary to carry out the purposes of this subparagraph. The department, in consultation with the Public Utility Commission and the Department of Aging, shall establish reasonable per mile or trip fare limits for purposes of section 203(5)(ii) and (iii). In accordance with Section 2203-A(27) of the act of April 9, 1929 (P.L. 177, No. 175), known as 'The Administrative Code of 1929,' no

on contract which should properly be before the Board of Claims, it is clear that Triage does have an adequate remedy at law.

In that we have determined that we are without jurisdiction to hear this matter, we need not discuss the remaining issues raised by the parties. Accordingly, this matter is transferred to the Board of Claims for consideration as herein set forth in this opinion.

ORDER

AND NOW, this 10th day of February, 1988, we will grant the application of the Commonwealth of Pennsylvania, Department of Transportation to strike the appendix filed by Triage, Inc., and will also transfer the matter herein to the Board of Claims for consideration in accordance with this opinion.

---

such regulation shall take effect until they are submitted to the Department of Aging for comment. (Footnote omitted.)