# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joshua Voss, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1102 C.D. 2024 |
| | : | |
| Pennsylvania Gaming Control Board | : | |
| (Office of Open Records), | : | |
| Respondent | : | Argued: June 4, 2025 |

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MATTHEW S. WOLF, Judge

OPINION BY JUDGE WOLF     FILED: August 28, 2025

Joshua Voss (Requester) petitions this Court for review of the July 26, 2024 Final Determination of the Office of Open Records (OOR). The Final Determination denied Requester's appeal from the Pennsylvania Gaming Control Board's (Board) denial of a request for certain third-party records held by Greenwood Gaming and Entertainment, Inc. d/b/a Parx Casino (Parx) pursuant to Section 506(d)(1) of the Right-to-Know Law (RTKL).[1] Section 506(d)(1) of the RTKL requires disclosure of records held by a third party with whom the agency has contracted to perform a governmental function under certain circumstances. Upon review, we conclude that because Board has not contracted with Parx to perform a

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. § 67.506(d)(1).

governmental function on its behalf, the requested records are not subject to disclosure under the RTKL. Accordingly, we affirm the OOR.

## I. BACKGROUND

Parx holds a Category 1 slot machine license pursuant to the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101-1904. (Gaming Act or Act). Reproduced Record (R.R.) at 3a. The Board is the agency with "sole regulatory authority over the conduct of gaming and related activities" as described in the Act. 4 Pa.C.S. § 1202. As a Category 1 slot machine licensee, Parx is subject to the rules and regulations of the Gaming Act, including Section 1403(b), which requires licensees to deposit a percentage of their slot machine proceeds into a bank account for payment of a "slot machine tax" to the Commonwealth. 4 Pa.C.S 1403(b).[2]

In the instant matter, Requester filed a RTKL request with the Board seeking:

> For the period January 1, 2024, to May 31, 2024, monthly bank statements for the Parx [] bank account where daily

---

[2] Section 1403(b) provides:

(b) Slot machine tax.--The department shall determine and each slot machine licensee, other than a Category 4 slot machine licensee, shall pay a daily tax of 34% from its daily gross terminal revenue from the slot machines in operation at its facility and a local share assessment as provided in subsection (c). All funds owed to the Commonwealth, a county or a municipality under this section shall be held in trust by the licensed gaming entity for the Commonwealth, the county and the municipality until the funds are paid or transferred to the fund. Unless otherwise agreed to by the board, a licensed gaming entity shall establish a separate bank account to maintain gross terminal revenue until such time as the funds are paid or transferred under this section. Moneys in the fund are hereby appropriated to the department on a continuing basis for the purposes set forth in subsection (c).

4 Pa.C.S. § 1403(b).

gross terminal revenue is deposited by Parx, as required under 4 Pa.C.S. [§] 1403(b), before Parx transfers the daily tax and local share assessment to the Commonwealth.

R.R. at 1a. The Board's open records officer denied the request, stating that such records were not in the Board's possession. Along with the denial, the open records officer included an attestation stating that the Board concluded that it did not have the requested records following a search for same. *Id.* at 2a-4a. Requester followed up with the Board's open records officer to inquire if she had asked Parx for the records, contending that such records were subject to disclosure under Section 506(d)(1) of the RTKL. The open records officer responded that because Parx was not a party with which the Board had contracted to perform a governmental function, the Board did not request the records from Parx. *Id.* at 5a.

Requester appealed to the OOR, arguing that the requested records were subject to disclosure under Section 506(d)(1) of the RTKL because the Board contracted with Parx to hold funds in trust for payment of the slot machine tax to the Commonwealth. R.R. at 20a. In response, the Board maintained that it is merely a regulator of slot machine licensees and enforces the obligations and responsibilities of licensees as set forth in the Gaming Act. It clarified that it has no control over a licensee's creation of a slot machine tax account, or control over the collection or flow of those funds to the State Gaming Fund. In short, the Board submitted that it does not contract with its licensees to perform their own regulatory responsibilities, and the payment of required taxes is solely within the purview of the licensee, and not a governmental function of the Board. *Id.* at 14a.

The OOR issued a Final Determination on July 26, 2024, affirming the Board's denial of Requester's request. Therein, it concluded that Parx's category 1 slot machine license did not constitute a contract between the Board and Parx, noting

3

that "a license is not a contract, and a contract is not a license." R.R. at 26a-27a.[3] The OOR further found that even if Section 1403(b) of the Gaming Act created a contract, the Board had not delegated any governmental function to Parx, and Parx's compliance with the Act's slot machine tax provisions did not equate to performance of a governmental function on behalf of the Board. *Id.* at 27a-28a. The OOR explained:

> [The Board] does not contract with any slot machine licensee to uphold its statutory obligations under the [Gaming] Act, it is not involved in any stage of depositing or managing the funds held in the licensees' bank accounts, and it has no control over the disbursement of funds to the State Gaming Fund. Additionally, Parx is not required in conjunction with the maintaining of said account to provide bank statements to the Board. Lastly, Parx is not performing regulation on behalf of the Board, as the Board was created to be the sole regulatory authority over the conduct of gaming, i.e., its governmental function is regulatory—not tax collection.

R.R. at 27a-28a. (internal citations omitted). Requester appealed the Final Determination to this Court.

## II. ISSUES

On appeal,[4] Requester argues that the OOR improperly concluded that Parx does not have a contractual relationship with the Board. Requester further contends that the requested records directly relate to Parx's holding of funds in trust to pay as taxes to the Commonwealth pursuant to the Gaming Act, which it asserts is a governmental function it performs on behalf of the Board.

---

[3] In support of this conclusion, the OOR also quoted our Supreme Court's decision in *Young J. Lee, Inc. v. Dep't of Rev.*, 474 A.2d 266 (Pa. 1983), as discussed under Heading III, *infra*.

[4] We exercise *de novo*, plenary review when considering RTKL appeals stemming from OOR determinations. *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 477 (Pa. 2013).

With respect to these issues, the Board and Parx both argue that the OOR properly concluded that Parx does not have a contract to perform a governmental function for the Board. They further contend that even if a contract existed, the requested records do not relate to any governmental function. Alternatively, Parx contends that even if the records were otherwise public records under the RTKL, they are exempt from disclosure as confidential proprietary business records.

## III. DISCUSSION

Section 506(d)(1) of the RTKL governs when a third-party record may be considered a "public record"[5] for purposes of disclosure under the RTKL. Specifically, Section 506(d)(1) provides:

> A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

65 P.S. § 67.506(d)(1).

This Court has previously stated that:

---

[5] Section 102 of the RTKL defines a "public record" as:

[a] record, including a financial record, of a Commonwealth or local agency that:
(1) is not exempt under section 708[, dealing with exceptions for public records];
(2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or
(3) is not protected by a privilege.

65 P.S. § 67.102. Section 301 of the RTKL requires that "[a] Commonwealth agency shall provide public records in accordance with this act." 65 P.S. § 67.301(a).

[t]o invoke Section 506(d)(1), two elements must be satisfied to reach records outside an agency's possession. First, the third party must perform a governmental function on behalf of the agency. And second, the information sought must directly relate to that function. Thus, non-exempt records of a third party may be subject to disclosure, provided the third party in possession has a contract with the agency to perform a governmental function, and the information directly relates to the performance of that function.

*S. Alleghenies Plan. & Dev. Comm'n v. Latker* (Pa. Cmwlth., Nos. 827-829 C.D. 2023, filed June 27, 2024), 2024 WL 3191702 (quoting *Dental Benefit Providers, Inc. v. Eiseman*, 124 A.3d 1214, 1223 (Pa. 2015)) (internal citations, quotation marks, and brackets omitted).[6] Accordingly, the threshold question under Section 506(d)(1) is whether the third party has contracted with the agency to perform a governmental function. While this is a single inquiry, we note that it necessarily requires the coexistence of two separate factors: (1) there must be a contract between a government agency and a third party, and (2) the contract must delegate a governmental function of the government agency to the third party.

In *Eiseman*, our Supreme Court noted the importance of a contractual relationship, holding that "Section 506(d)(1) of the RTKL contemplates an *actual contract* with a third party[.]" *Eiseman*, 124 A.3d at 1223 (emphasis added).[7] Courts

---

[6] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, unreported opinions of this Court may be cited for their persuasive value. 210 Pa. Code § 69.414(a).

[7] In *Eiseman*, the Supreme Court dealt with the issue of whether certain dental subcontractors had an actual contract with the Department of Public Welfare (DPW) for the purpose of implementing its Medicaid program, ultimately concluding that the subcontractors and DPW did not have an actual contract. The Supreme Court in *Eiseman* upheld this Court on the basis that no contract existed between DPW and the dental subcontractors, but rather, the subcontractors had **(Footnote continued on next page…)**

6

in this Commonwealth have previously weighed in on the similarities between a contract and a license. Outside of the RTKL and in the context of lottery licenses, our Supreme Court has previously observed that "[a] lottery license which permits the licensee to sell state lottery tickets and to receive a commission from the Commonwealth on each sale has *features* of both a license and a contract between the Commonwealth and the licensee." *Young J. Lee, Inc. v. Dep't of Revenue, Bureau of State Lotteries*, 474 A.2d 266, 271 (Pa. 1983) (emphasis added).[8] However, the *Lee* Court also explained "[g]overnment licenses generally constitute a form of property insofar as they are an entitlement to engage in a valuable activity." *Id.* at 270. As noted by the OOR in its Final Determination, while a contract and a license may have similar trimmings, the two terms are not in this context used interchangeably and the concepts remain distinct.

Further, for third-party records to be disclosable under Section 506(d)(1), the contract must "delegat[e] some substantial facet of the agency's role and responsibilities" to the third party. *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1043 (Pa. 2012). Stated differently, this requires an agency to contract away "a function generally performed by that agency [that] is not ancillary to the agency's functions." *Dental Benefit Providers, Inc. v. Eiseman*, 86 A.3d 932, 939 (Pa. Cmwlth. 2014) (citing *SWB Yankees LLC*, 45 A.3d at 1044).

---

negotiated with DPW's contractors. Thus, the subcontractors were not a third party with which DPW had contracted to perform a governmental function under the Section 506(d)(1) of the RTKL. *See Eiseman*, 124 A.3d at 1223 (citing *Dental Benefit Providers, Inc. v. Eiseman,* 86 A.3d 932, 939-40 (Pa. Cmwlth. 2014)). While there are no subcontractors at issue in this case, the same threshold question—whether an *actual contract* exists between a third party and a Commonwealth agency—remains at issue and therefore we find *Eiseman* relevant, even though the facts are not directly analogous.

[8] While this case deals with the due process rights of a licensee with respect to revocation of a license, we still find the legal principle discussed therein to be applicable to the instant case.

Applying this legal framework to the instant case, we conclude that no contract exists between Parx and the Board. The license held by Parx in this case is an entitlement to engage in a valuable activity and falls squarely within the regulatory framework of the Gaming Act. Even if the license shares certain features of a contractual relationship, it does not constitute an actual contract between Parx and the Board. *Young J. Lee, Inc.*, 474 A.2d at 270. While Requester argues that "Parx's licensing process and the duties attendant to the Category 1 slot machine license carry the hallmarks of a contractual relationship," Requester's Reply Brief at 3, we note that many of those "hallmarks" are actually absent. Indeed, Parx has not engaged in a bargained-for exchange with the Board—rather, it has obtained a license to operate slot machines by complying with the applicable statutory conditions for licensure, thereby enabling it to conduct an activity it otherwise could not. Accordingly, we agree with the OOR that Parx and the Board do not have a contractual relationship.

As to the second factor of the inquiry, we also conclude that Parx has not agreed to take on a governmental function on behalf of the Board. Rather, it bears the burden of adhering to the regulatory framework to which its license is bound. As the OOR noted in support of its conclusion, tax collection is not a governmental function of the Board. The Board's function is regulation.[9] Simply put, any obligation Parx has to the Board under its license is merely regulatory compliance that it undertakes for its own benefit, with the remedy for any failure to comply sounding in regulation, not contract law. If Parx failed to comply with its

---

[9] Section 1403 of the Gaming Act places the obligation of assessing and distributing funds collected under such section to "the [D]epartment[.]" 4 Pa.C.S. § 1403. Section 1103 of the Gaming Act defines "Department" as "[t]he Department of Revenue of the Commonwealth[.]" 4 Pa.C.S. § 1103.

8

obligations, it could lose its license or be subject to other regulatory or criminal consequences, but it would not be held liable for breach of contract.[10]  Here, the holding of funds in trust and subsequent payment of taxes by Parx is merely a licensing requirement that Parx performs for its own benefit of regulatory compliance.  As Parx does not have a contract to perform a governmental function on behalf of the Board, the OOR properly concluded that the requested records were not subject to disclosure under Section 506(d)(1) of the RTKL.[11]

## IV. CONCLUSION

For the foregoing reasons, the July 26, 2024 Final Determination of the Office of Open Records (OOR) is affirmed.

_____
MATTHEW S. WOLF, Judge

---

[10] Section 1518 of the Gaming Act lays out the penalties for violations of the Act's provisions. Under Section 1518(a)(2), it is "unlawful for a person to willfully: (i) fail to report, pay or truthfully account for . . . tax or assessment imposed under this title; or (ii) attempt in any manner to evade or defeat any . . . tax or assessment or any other fee imposed under this title."  4 Pa.C.S. § 1518(a)(2).  Section 1518(b)(1)(ii) states that such violations are criminal offenses graded as misdemeanors of the first degree, with subsequent violations being graded as felonies of the second degree.  Section 1518(c)(1) lays out a variety of administrative sanctions that may be imposed in addition to criminal penalties for violations, including the revocation of licenses.

[11] At the close of its brief, Parx asks this Court to order Requester to pay all reasonable attorneys' fees and all other costs and expenses incurred by Parx in relation to defending this matter pursuant to Section 1304(b) of the RTKL, which permits a court to "award reasonable attorney fees and costs of litigation or an appropriate portion thereof to an agency or the requester if the court finds that the legal challenge under this chapter was frivolous."  65 P.S. § 67.1304(b).  Parx does not develop its argument as to the frivolousness of the instant appeal or cite any case law to support such contention.  Thus, we decline its request for fees and costs.

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joshua Voss, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1102 C.D. 2024 |
| | : | |
| Pennsylvania Gaming Control Board | : | |
| (Office of Open Records), | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 28th day of August 2025, the July 26, 2024 Final Determination of the Office of Open Records in the above-captioned matter is **AFFIRMED**.

_____
MATTHEW S. WOLF, Judge